Christian A. Cavallo (Attorney No. 8582413)
**GOLDBERG SEGALLA, LLP**
1037 Raymond Blvd, Suite 1010
Newark, NJ 07102
(t) 973.681.7000
(f) 973.681.7101
ccavallo@goldbergsegalla.com
Attorney for Defendant,
Catlin Specialty Insurance Company

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| AEGIS SECURITY INSURANCE COMPANY, | : | CIVIL ACTION  NO. |
| Plaintiff, | : | |
| v. | : | **NOTICE OF REMOVAL** |
| CATLIN SPECIALTY INSURANCE COMPANY, | : | |
| Defendant. | : | |

## <u>NOTICE OF REMOVAL</u>

Pursuant to 28 U.S.C. §§ 1332(a)(1), 1441, and 1446, defendant Catlin Specialty Insurance Company ("Catlin"), by its undersigned attorney, submits this Notice of Removal from the Superior Court of New Jersey, Law Division, Middlesex County, in which the above-captioned matter is now pending, to the United States District Court for the District of New Jersey.  In support of its Notice of Removal and without waiving any rights or defenses under the applicable insurance policy or at law, Catlin states as follows:

**Nature of the Action**

1.     Plaintiff Aegis Security Insurance Company ("Aegis") commenced this lawsuit against Catlin in the Superior Court of New Jersey, Law Division, Middlesex County under Docket no. MID-L-004827-17 by filing a Complaint on or about September 15, 2017 (the "Action").  A copy of the Summons and Complaint filed in the Action are attached hereto as Exhibit A.  No orders, and no other process or pleadings, have been served upon Catlin in the Action.

2.     The Action is an insurance coverage dispute.  Aegis's Complaint asserts causes of action against Catlin for declaratory judgment and breach of contract in which Aegis alleges that Catlin owed a duty to defend and indemnify Catlin's insured Global Indemnity Insurance Agency, Inc. ("Global") in a lawsuit that Aegis filed against Global (the "Underlying Action"). (*See* Exhibit A Complaint.)  Catlin denied Aegis's allegations.  Aegis alleges that Catlin insured Global under a Catlin Insurance Agency Professional Liability Policy bearing policy number IAL-70083-1116, for the policy period of November 26, 2016 to November 26, 2016 (the "Catlin Policy").  (*See id.*, ¶ 15.)  Global is not a party to the Action.  Aegis asserts claims based on a purported assignment of rights by Global to Aegis in a settlement of the Underlying Action. (*See id.*, ¶ 60.)  Aegis's breach of contract claim seeks an award of compensatory damages and other relief, including but not limited to $450,000 as set forth in a Consent Judgment between Aegis and Global.

3.     Catlin was served with the Summons and Complaint in the Action by service upon the Commissioner of the New Jersey Department of Banking and Insurance on or about September 18, 2017.

**The District Court has Jurisdiction Over this Matter Under 28 U.S.C. § 1332(a)(1)**

4.  Pursuant to 28 U.S.C. § 1441(a), a state court action over which a District Court of the United States would possess original jurisdiction may be removed to the District Court for the district and division embracing the place where the state court action is pending.

5.  A District Court shall have original jurisdiction over a proceeding between citizens of different states where the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a)(1).

6.  Here, both requirements of Section 1332(a)(1) are met with regard to the Action because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

**There is Complete Diversity of Citizenship Between the Parties**

7.  A District Court shall have original jurisdiction over a proceeding between citizens of different states.  28 U.S.C. § 1332(a)(1).

8.  The only parties to the Action are Aegis and Catlin.

9.  Aegis is incorporated in the Commonwealth of Pennsylvania and its principal place of business is located in Harrisburg, Pennsylvania.  Accordingly, pursuant to 28 U.S.C. § 1332(c)(1), Aegis is a citizen of Pennsylvania.

10.  Catlin is incorporated in the State of Delaware and its principal place of business is in Atlanta, Georgia.  Accordingly, pursuant to 28 U.S.C. § 1332(c)(1), Catlin is a citizen of Delaware and Georgia.

11.  Accordingly, the complete diversity of citizenship requirement of 28 U.S.C. § 1332(a)(1) is satisfied.

**The Amount in Controversy Exceeds $75,000**

12.  A District Court shall have original jurisdiction over a proceeding where the

amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a)(1).

13.      In its Complaint in this Action, Plaintiff seeks compensatory damages and other relief, including but not limited to $450,000 in satisfaction of the Consent Judgment between Aegis and Global in the Underlying Action.   Accordingly, the amount in controversy requirement of 28 U.S.C. § 1332(a)(1) is satisfied.

## Removal to this Court is Proper

14.      For the reasons set forth above, this Court has subject matter jurisdiction over the Action under 28 U.S.C. §1332(a)(1).  Venue is proper before this Court pursuant to 28 U.S.C. § 1441(a) as this is the Federal District Court for the district and division embracing the place where the Action is pending.

15.      Catlin, the only defendant in the Action, is not a citizen of New Jersey.  Thus, 28 U.S.C. § 1441(b)(2) does not preclude removal of the Action.  Nor is the Action among the classes of cases not subject to removal pursuant 28 U.S.C. § 1445.

16.      This Notice of Removal is filed with this Court within the requisite thirty (30) days after service of the Summons and Complaint on Catlin, pursuant to  28 U.S.C. § 1446.

17.      Catlin shall promptly file a copy of this Notice of Removal with the Clerk of the Court, Superior Court of New Jersey, Law Division, Middlesex County, and shall give written notice of the removal to counsel for Plaintiff Aegis.

18.      Therefore, Catlin hereby removes the Action to the United States District Court for the District of New Jersey, Newark vicinage.

GOLDBERG SEGALLA LLP

By: _____

Christian A. Cavallo, Esquire
*Attorney for Defendant*
*Catlin Specialty Insurance Company*

Dated:  October  18, 2017

Exhibit A



## State of New Jersey
### Department of Banking and Insurance
### Office of the Commissioner

**Chris Christie**
*Governor*

**Kim Guadagno**
*Lt. Governor*

PO Box 325
Trenton, NJ 08625-0325

Tel (609) 292-7272

**Richard J. Badolato**
*Commissioner*

9/18/2017

*CERTIFIED MAIL*
*RETURN RECEIPT REQUESTED*

RECEIVED
EXTON LEGAL

SEP 2 2 2017

Barb Brown

SEP 2 7 2017

Attention: TONI ANN PERKINS
CATLIN SPECIALTY INSURANCE COMPANY
70 SEAVIEW AVENUE
STAMFORD, CT 06902-2040

RE: Aegis Security Insurance Company v. Catlin Specialty Insurance
    Company
    Superior Court of New Jersey, Middlesex County Law Division
    Docket No. : MID-L-004827-17

Dear Sir/Madam:

You are hereby notified that on this date the Commissioner of the New Jersey Department of Banking and Insurance has accepted original service of process on your behalf in the above-captioned matter. The documents served are enclosed herein.

By copy of this letter I am advising the Attorney for the Plaintiff(s) in this matter and certifying with the Clerk of the Court that these documents have been transmitted to you, and confirming that the Commissioner of Banking and Insurance is not authorized to receive service of any further documents in this action.

Very Truly Yours,

**Debra A. Mullen**
Administrative Assistant

C:  Carl A. Salisbury, Esq.
    Bramnick, Rodriguez, Grabas, Arnold & Mangan
    1827 East Second Street
    Scotch Plains, NJ 07076

    Clerk of the Superior Court, Middlesex County

---

*Visit us on the Web at dobi.nj.gov*

*New Jersey is an Equal Opportunity Employer*  *Printed on Recycled Paper and Recyclable*

## SUMMONS

Attorney(s) Bramnick, Rodriguez, et al.

Office Address 1827 East Second Street

Town, State, Zip Code Scotch Plains, NJ 07076

Telephone Number 908-322-7000

Attorney(s) for Plaintiff Aegis Security Insurance Company

Aegis Security Insurance Company

_____

Plaintiff(s)

vs.

Catlin Specialty Insurance Company

_____

Defendant(s)

**Superior Court of New Jersey**

Middlesex County

Law Division

Docket No: 004827-17

## CIVIL ACTION SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

Clerk of the Superior Court

DATED: 09/15/2017

Name of Defendant to Be Served: Catlin Specialty Insurance Company

Address of Defendant to Be Served: 160 Greentree Drive, suite 101, Dover, DE 11904

Revised 11/17/2014, CN 10792-English (Appendix XII-A)

Carl A. Salisbury (013991992)
**Bramnick, Rodriguez, Grabas, Arnold & Mangan**
1827 East Second Street
Scotch Plains, NJ 07076
908-322-7000
Attorneys for Aegis Security Insurance Company
-----------------------------------------------------x

| | |
|---|---|
| AEGIS SECURITY INSURANCE COMPANY, ) | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MIDDLESEX COUNTY |
| ) | |
| Plaintiff, ) | Civil Action |
| ) | DOCKET NO: MID-L- 004827-17 |
| v. ) | |
| ) | COMPLAINT |
| CATLIN SPECIALTY INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

-----------------------------------------------------x

Aegis Security Insurance Company, 2407 Park Drive, Suite 200, Harrisburg, PA 17110,

by its attorneys, for its Complaint against Catlin Specialty Insurance Company, 160 Greentree

Drive, Suite 101, Dover, DE 11904, alleges as follows:

### THE PARTIES

1.     Plaintiff Aegis is an insurance company that issued certain surety bonds in

connection with construction projects more fully described below.

2.     Defendant Catlin is an insurance company that issued a Professional Liability

insurance policy to Global Indemnity Insurance Agency, as more fully described below.

### JURISIDICTION AND VENUE

3.     This Court has original jurisdiction of this insurance coverage declaratory judgment

and breach of contract action.

4.     Venue is proper in this Court because this is the County where the cause of action

arose.

1

## THE FACTS GIVING RISE TO THE ACTION

### The SOT Project Claim

5.      On April 3, 2006, an insurance agency, Global Indemnity Insurance Agency, Inc. ("Global"), 20 Highland Avenue, Metuchen, NJ 08840, as agent for Plaintiff Aegis, placed two surety bonds -- a payment bond and a performance bond -- in connection with a $1.9 million construction project to renovate the South Orange Fire House (the "SOT Project") for which a company called Parikh, Inc. was the general contractor and "Principal" under the bonds.

6.      Plaintiff Aegis issued the bonds through a Power of Attorney granted to an employee of Global, David Morgan, in the amount of $2,000,000.  Morgan is now deceased.

7.      The SOT Project was commenced, prior to Parikh and Global's involvement, by an original contractor called G. Pacillo Mechanical, LLC, with an original performance bond issued by Colonial Surety Company.  Colonial retained Parikh to complete the SOT Project after Pacillo's default.

8.      Parikh signed a Completion Contract with Colonial and Aegis issued its payment and performance bonds in connection with that contract.

9.      Parikh subsequently defaulted on its obligations to complete the SOT Project and South Orange sought payment under the Aegis bonds to complete the construction.

10.      Aegis paid under the bonds.

11.      On February 29, 2016, Aegis made a written demand upon Global to reimburse Aegis for, among other things, the costs Aegis expended to complete the SOT Project.  A copy of the demand letter is attached as Exhibit A.

12.      Aegis alleged that Global and Morgan made mistakes and misrepresentations in issuing the bonds.

2

13.     Specifically, Aegis alleged that Morgan and Global (a) failed to ensure that major sub-contractors performing work in excess of $100,000 would be separately bonded, as Aegis had required as an express condition to issuing the bonds, (b) was negligent in failing to discover that Parikh's personal residence, which was pledged as security for the bonds, was worth substantially less than the $2 million that Morgan had represented to Aegis that it was worth, and (c) was negligent in failing to obtain an appraisal of the Parikh residence, as Aegis had required.

14.     On March 2, 2016, Global notified Catlin, its professional liability insurer, about the Aegis claim regarding the SOT Project and requested that Catlin defend and indemnify Global for that claim. A copy of the notice letter is attached as Exhibit B.

**The Catlin Policy**

15.     Catlin issued a Catlin Insurance Agency Professional Liability Insurance Policy to Global, policy no. IAL-700083-1115, covering the period November 26, 2015 to November 26, 2016 (the "Policy"). The Policy provides claims-made coverage for actual and alleged "wrongful acts" committed by Global, with policy limits of $2,000,000 per claim and in the aggregate. There is a retention amount (essentially a deductible) of $50,000. A copy of the policy is attached as Exhibit C.

16.     The Insuring Agreement of the Policy provides as follows:

**I.     Insuring Agreement**

The **Insurer** shall pay, on behalf of an **Insured**, **Loss** which the **Insured** becomes legally obligated to pay because of a **Claim** that is both made against the **Insured** and reported to the **Insurer** in writing during the **Policy Period** or Discovery Period, if applicable, for a **Wrongful Act** committed solely in the rendering or failing to render **Professional Services** for a **Client.**

17.     The policy provides that Catlin "shall have the right and duty to defend any civil litigation or arbitration that constitutes a **Claim** against the **Insured** that is covered by the Policy."

3

18.     The Policy defines "Claim" as, among other things, "a written demand received by any **Insured** for monetary damages (including pleadings received in a civil litigation, arbitration, mediation or alternative dispute resolution) for an actual or alleged **Wrongful Act.**"

19.     The Policy defines "Wrongful Act" broadly, to mean "a negligent act, error or omission of **Personal Injury** committed by an **Insured** or any natural persons for whose **Wrongful Acts the Insured** is legally responsible solely in the rendering of or failing to render **Professional Services.**"

20.     Catlin does not dispute that the demand Aegis has made on Global in connection with the SOT Project is a "Claim." It is a written demand for monetary damages.

21.     There is no legitimate dispute that the Claim also alleges covered "Wrongful Acts." Aegis claims that Global and its employee, Morgan, made mistakes, errors and omissions when he placed the surety bond for Parikh to cover the SOT Project.

22.     Nonetheless, Catlin issued two separate denial letters.

23.     The first denial letter was frivolous and Catlin later disavowed it.

**Catlin's initial frivolous denial**

24.     In a letter dated March 14, 2015 (*sic*, should be 2016), Catlin denied coverage on the grounds that the claim Aegis asserts against Global does not constitute a "Wrongful Act" in the rendering of "Professional Services." A copy of the March 14, 2016 frivolous denial letter is attached as Exhibit D.

25.     Specifically, Catlin pointed in defense to the definition of "Professional Services," which says that Professional Services does not include "the sale, attempted sale, servicing or any activities in connection with (i) mutual funds; (ii) securities, including but not limited to, stocks, bonds, limited partnerships, promissory notes, viatical settlements, leasing arrangements, real

4

estate trusts, and investment participation or pooling arrangements."

26.    Catlin took the position that the surety bond at issue constituted the sale or attempted sale of "bonds" and denied all coverage for Aegis's claims against Global.

**Catlin's Further Review of the SOT Project Claim**

27.    In an apparent recognition that such a denial of coverage constituted a bad-faith and entirely frivolous expansion of the exclusion for the sale of "securities" under the circumstances, Catlin sent a letter to Global on May 23, 2016, advising that it would "provide coverage for this matter [the SOT Project Claim] subject to the reservation of rights set forth below." That reservation of rights did not mention the absurd grounds set forth in the March 14, 2016 letter nor did it include any reference to the exclusion for the sale of "securities." The letter provided that it "supersedes any previously issued coverage position." A copy of that letter is attached as Exhibit E.

28.    Catlin's defense of Global in connection with the SOT Project Claim was short-lived.

**Catlin's wrongful second denial**

29.    In an undated letter that Catlin emailed to Global on July 14, 2016, Catlin provided a new basis for denying the Aegis SOT Project Claim that purportedly "supersedes any prior correspondence issued by Catlin" in connection with its coverage evaluation. In other words, Catlin again repudiated its prior bad-faith denial. A copy of this letter is attached as Exhibit F.

30.    In the new denial letter, Catlin cited a policy condition entitled "Single Claim and Retention/Interrelated Wrongful Acts." Under that provision:

> All **Claims** based upon or arising out of the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be considered a single **Claim** and each such single **Claim** shall be deemed to have been made on the earlier of:

5

A.    when the earliest **Claim** arising out of such **Wrongful Act** or **Interrelated Wrongful Acts** was first made; or

B.    when notice was provided to the **Insurer** pursuant to section XIII.B. herein concerning a **Wrongful Act** giving rise to such **Claim.**

31.    The term "Interrelated Wrongful Act" means "Wrongful Acts" that are:

1.    similar, repeated or continuous; or

2.    connected by reason of any common fact, circumstance, situation, transaction, causality, event, decision or policy or one or more series of facts, circumstances, situations, transactions, casualties [*sic*], events decisions, or policies.

32.    According to Catlin, an entirely separate claim made by Aegis against Global in 2013 in connection with a surety bond issued to a different contractor, CBC, and in connection with a completely different construction project in the Borough of Washington (the "BOW Project"), based upon the breach of Surety Agreement between Aegis and Global not at issue on the SOT Project Claim, is somehow an "Interrelated Wrongful Act" with the surety and the performance bonds issued to Parikh, Inc. for the SOT Project. According to Catlin, since the Aegis claim on the BOW Project was made against Global in 2013, "the SOT Project Claim was not first made during the November 26, 2015 to November 26, 2016 Policy Period, it [therefore] does not trigger coverage under the Policy."

33.    In a similar vein, Catlin pointed to Exclusion E as a justification for denying coverage. That exclusion says the Insurer will not pay a Loss for any Claim:

E.    arising out of, based upon or in any way involving any known prior and pending litigation against any **Insured** filed on or before the Effective Date of this Policy or under any other policy of which this Policy is a direct or indirect renewal or replacement, whichever is earlier, of which is related in any way to the same or substantially the same facts, circumstances or situations which are the subject of or the basis for such prior and pending litigation.

34.    Upon information and belief, Catlin denied coverage for the SOT Project Claim

6

before the counsel it had retained in accordance with its May 23, 2016 reservation of rights had even communicated an opinion concerning Global's liability exposure.

35.     Specifically, it was not until July 20, 2016 that counsel retained by Catlin issued an opinion in the context of a mediation between Global and Aegis, that there were questions of fact concerning whether Global might have liability to Aegis and, if so, the extent of that liability.

36.     Upon information and belief, there were outstanding requests that counsel retained by Catlin had requested from Global that had not yet been provided as of July 14, 2016, when Catlin issued its denial letter.

37.     In other words, Catlin could not have completed its investigation of the SOT Project Claim at the time it issued its denial letter on July 14, 2016.

38.     Catlin is or should be aware that, in construing an insurance policy to determine coverage, "a broad and liberal view should be taken so that the policy is construed in favor of the insured." *Kopp v. Newark Ins. Co.*, 204 N.J.Super. 415, 420 (App. Div. 1985)(*citing Kievit v. Loyal Protect. Life Ins. Co.*, 34 N.J. 475, 482 (1961)).

39.     Catlin is or should be aware that special rules of construction apply to exclusions in coverage: "[I]f a clause in question is one of exclusion or exception designed to limit the protection afforded by the general coverage provisions of the policy, a strict interpretation is in order." *Kopp v. Newark*, 204 NJ.Super. at 238.

40.     Catlin is or should be aware that "exclusions do not shed their essential character when they are moved from one section of a policy and are crafted as part of that policy's grant of coverage." *Carter–Wallace, Inc. v. Admiral Ins. Co.*, 154 N.J. 312, 332 (1998).

41.     Catlin invoked the "Interrelated Wrongful Acts" provision, which appears in the "Conditions" section of the policy, as an exclusion from coverage for any claims arising out of the

"same wrongful act" or "interrelated wrong act" as a claim originating in a prior policy period.

42.     Accordingly, the "Interrelated Wrongful Acts" provision must be narrowly construed against Catlin and in favor of coverage. *Kopp v. Newark*, 204 NJ.Super. at 238.

43.     Two separate actions do not arise from "interrelated wrongful acts" if they are legally distinct claims that allege different wrongs to different people.

44.     For the allegations in two separate actions to constitute interrelated wrongful acts, the allegations of the second action must substantially overlap with those of the first.

45.     The claims relating to the BOW Project and the claims relating to the SOT Project do not substantially overlap, one with the other.  Instead, they involve allegations of different acts on the part of Global, at entirely different times, on completely different construction projects, relating to completely separate construction companies, and involving two different contracts between Aegis and Global.

46.     Catlin's interpretation of these provisions means that any time an employee at Global allegedly makes underwriting or other mistakes in the issuance of surety bonds, Catlin may deny any coverage through application of these two exclusionary provisions, effectively eliminating a significant portion of the liability coverage Global purchased.

47.     No insured would reasonably expect that, any time one of its employees was accused of a wrongful act, all subsequent accusations of professional negligence by that employee would be excluded from coverage.

### The Settlement of the BOW Project Claim and the SOT Project Claim

48.     In an agreement dated March 18, 2013, Aegis and Global entered into a Tolling Agreement in an attempt to reach an amicable resolution of the BOW Project Claim.  The Tolling Agreement was extended numerous times through August 31, 2016.

8

49.    On August 16 and 17, 2016, a mediation was held between Aegis and Global to explore the possibility of settlement of both the BOW Project Claim and the SOT Project Claim.

50.    On July 29, 2016, Global's insurance coverage counsel sent a letter to Catlin that placed Catlin on notice of the mediation. A copy of that letter is attached as Exhibit G.

51.    The July 29, 2016 letter informed Catlin that, although the denial of coverage eliminated the need to cooperate or to consult with Catlin concerning the settlement of the Claims, Global intended to hold Catlin liable for any defense costs incurred and any settlement reached in the mediation, including counsel fees under *R.* 4:42-9(a)(6).

52.    The mediation did not result in a settlement between Aegis and Global and the Tolling Agreement between the parties expired on August 31, 2016.

53.    Aegis filed a Complaint against Global on about September 1, 2016, relating to the BOW Project Claim.

54.    On about January 6, 2017, Aegis filed an Amended Complaint against Global, relating to the SOT Project Claim. A copy of the Amended Complaint is attached as Exhibit H.

55.    In a letter dated January 20, 2017, Global's insurance coverage counsel sent the Amended Complaint to Catlin and tendered the defense and indemnity of the action for insurance coverage. A copy of the January 20, 2017 letter is attached as Exhibit I.

56.    In a letter dated February 10, 2017, Catlin denied coverage for the claims made against its insured in the Amended Complaint. A copy of the February 10, 2017 denial letter is attached as Exhibit J.

57.    In February 2017, Aegis and Global settled and resolved the claims that Aegis made against Global in connection with both the SOT Project Claim and the BOW Project Claim, pursuant to a Settlement Agreement and Mutual Release. A copy of the Settlement Agreement

and Mutual Release is attached as Exhibit K.

58.     With respect to the BOW Project Claim, the sum of $475,000 was paid to Aegis by Allied World Surplus Lines Insurance Company, the 2013 professional liability insurer for Global. The BOW Project Claim was thereafter dismissed by Aegis from the Amended Complaint.  With respect to the SOT Project Claim, the terms of the settlement have been entered as a Consent Judgment in the action between them.  A copy of the Consent Judgment is attached as Exhibit L. A copy of the Confirmation of Mediation prepared by the mediator, Hon. Michael Brooke Fisher, J.S.C. (ret.), is attached as Exhibit M.

59.     Under the Consent Judgment, Global agrees to a settlement payment of $450,000, which represents a compromise of the claims Aegis made against Global on the SOT Project Claim.

60.     Under the Consent Judgment, Global has assigned to Aegis the claim it has for insurance coverage against Catlin with respect to the SOT Project Claim, in accordance with *Griggs v. Bertram,* 88 N.J. 347 (1982) and its progeny.

61.     Under the Consent Judgment, Aegis has agreed to seek recovery of the settlement payment for the SOT Project Claim from Catlin.

### Count I
(For Declaratory Judgment)

62.     Aegis repeats and realleges all of the allegations in the foregoing paragraphs as if fully set forth here.

63.     On account of the foregoing, there is a real and justiciable controversy between Aegis and Catlin in connection with the obligations of Catlin to provide insurance coverage for the claims Aegis made against Global.

64.     On account of the foregoing, Catlin breached its contractual obligations to Global

by failing and refusing to provide defense and indemnity coverage to Global under the Catlin Policy.

65.     On account of the foregoing, Aegis is entitled to a declaration that Catlin owes defense and indemnity coverage under the Catlin Policy for the claims Aegis made against Global on the SOT Project Claim.

WHEREFORE, Aegis seeks entry of judgment as follows:

66.     A declaration that Catlin owes a defense and indemnity coverage under the Catlin Policy for the claims Aegis made against Global on the SOT Project Claim.

67.     A declaration that Catlin breached its contractual obligations to Global in connection with the claims Aegis made against Global on the SOT Project Claim.

68.     An award of the reasonable attorneys' fees and costs incurred in this action, under the provisions of R. 4:42-9(a)(6).

69.     Such other and further relief as the Court may deem just and proper.

**Count II**
(For Breach of Contract)

70.     Aegis repeats and realleges all of the allegations in the foregoing paragraphs as if fully set forth here.

71.     On account of the foregoing, Catlin has breached its contractual obligations to Global in connection with the claims Aegis made against Global on the SOT Project Claim.

72.     On account of the foregoing, Catlin owed both a defense and indemnity to Global in connection with the claims Aegis made against Global on the SOT Project Claim.

73.     On account of the foregoing, Catlin's denial of coverage to Global was without a valid basis in the policy language or the facts and was therefore wrongful.

WEHREFORE, Aegis seeks entry of judgment as follows:

74.    Awarding Aegis compensatory damages in the amount of the settlement payment set forth in the Consent Judgment.

75.    Awarding Aegis compensatory damages as a consequence of Catlin's wrongful denial of coverage to Global, which will be the subject of proof at trial.

76.    An award of the attorneys' reasonable fees and costs incurred in prosecuting this action, under the provisions of *R.* 4:42-9(a)(6).

77.    Such other and further relief as the Court may deem just and proper.

Dated: Scotch Plains, NJ
August 14, 2017

**Bramnick, Rodriguez, Grabas, Arnold & Mangan**
Attorneys for Aegis Security Insurance Company (as assignee of Global Indemnity Insurance Agency, Inc.)

By: _____
Carl A. Salisbury (1039919?2)

## DEMAND FOR JURY TRIAL

Aegis demands a trial by jury on all matters and issues so triable.

## DESIGNATION OF TRIAL COUNSEL

Aegis hereby designates Carl A. Salisbury as trial counsel.

12

## RULE 4:5-1 CERTIFICATION

It is hereby certified that this matter is not the subject of any other pending in any court, is not the subject of any pending arbitration proceeding, and none is contemplated.

I certify that the forgoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Carl A. Salisbury (103991992)

13

E

X

H

I

B

I

T

A

# ROMANO GARUBO & ARGENTIERI

*Counselors at Law LLC*

Michael F.J. Romano, Member *
mromano@rgalegal.com

Angelo G. Garubo, Of Counsel **
agarubo@rgalegal.com

Emmanuel J. Argentieri, Member*
eargentieri@rgalegal.com

52 Newton Avenue
P.O. Box 456
Woodbury, NJ 08096
Telephone: (856) 384-1515
Telefax: (856) 384-6371

Louis W. Skinner *
lskinner@rgalegal.com

*Member of the NJ & PA Bar
**Member of the NJ & NY Bar

February 29, 2016

Jason A. Meisner, Esquire
Coughlin Duffy LLP
350 Mount Kemble Avenue
Morristown, New Jersey 07962

**THIS LETTER IS OFFERED FOR SETTLEMENT PURPOSES ONLY AND IS
INADMISSIBLE FOR ANY EVIDENTIARY PURPOSE IN ANY PROCEEDING**

Dear Mr. Meisner:

As you know, this office represents surety Aegis Security Insurance Company ("Aegis"). This will follow up on our various settlement discussions with regard to various claims of Aegis against your client, Global Indemnity Insurance Agency, Inc. ("Global").

On March 18, 2013, Aegis filed a Fourth-Party Complaint against Global in an action titled First Surety Financial, LLC v. Borough of Washington v. Aegis Security Insurance Company, in the Superior Court of New Jersey, Chancery Division, Warren County, Docket No: WRN-L-430-10 (the "*Lawsuit*"). It was agreed that the Lawsuit would go forward to verdict in binding arbitration before Judge Mecca while the Fourth-Party Complaint would be the subject of that certain Tolling Agreement we entered into originally on November 22, 2013 which establishes and defines an Effective Date of March 18, 2013 and which we have continually mutually extended now through March 15, 2016.

The Tolling Agreement covered not only claims actually asserted in the Lawsuit against Global (the "*Asserted Claims*") but also covered additional claims against Global which were not asserted in the Lawsuit ("*Non-Asserted Claims*"). The Tolling Agreement effectively stayed any and all claims, counter-claims, and cross-claims and the running of any periods of limitation, statutes of limitations and statutes of repose that may relate to the issues and/or causes of action that form the subject matter of the Asserted Claims and Non-Asserted Claims, as of the Effective Date, while the parties attempted to come to a mutually acceptable resolution without resorting to further litigation.

Accordingly, Aegis agreed to, and did voluntarily dismiss its Fourth Party Complaint against Global, without prejudice, subject to the terms of the Tolling Agreement.

As you know, the Lawsuit has resulted in a net decision against Aegis in the amount of $90,860.86.

Aegis is making this demand on Global in an effort to inspire a meaningful dialogue regarding the resolution or mediation of the remaining Asserted Claims *and* Non-Asserted Claims, as a precursor to the institution of litigation on or before March 15, 2016.

Jason A. Meisner, Esquire
Coughlin Duffy LLP
February 29, 2016
Page 2 of 4

      Over the last several years, Aegis has had an opportunity to review various bonds issued by Global which have resulted in substantial losses to Aegis. Amongst those losses were those on the bonds issued to 1) Consolidated Building Corp. on the BOW Municipal Building and Salt Shed Project (the "BOW Project") and 2) Parikh Inc. on the Village of South Orange Township Firehouse Project (the "SOT Project"). Aegis contends that it has also suffered losses on other matters as well but for settlement purposes, it is limiting this demand to those 2 specific projects. The total of the losses suffered by Aegis on these Projects is $1,732,223.70. The total losses are broken down as follows: $1,189,700.49 (BOW Project) and $542,523.21 (SOT Firehouse Project).

<u>BOROUGH OF WASHINGTON ("BOW")</u>

      On January 1, 2007, Aegis and Global entered into a written Surety Agent Agreement (see attached AEGIS 1) pursuant to which Global became the agent of Aegis with full power to receive and accept proposals for surety bonds wherever Aegis was authorized and licensed to write and issue surety bonds. Pursuant to the Surety Agent Agreement, Aegis bound Global to written guidelines (copies of which are attached as AEGIS 2) which were designed to control Global's decision making under the Surety Agent Agreement.

      David Morgan of Global had a previous relationship with the principals of a company called Consolidated Building Corporation ("CBC"). Global bound Aegis to a bond in favor of CBC on the BOW Project. Aegis contends that Global engaged in fraudulent and tortious conduct by, *inter alia*, breaching its common law duty to act as a reasonable agent in binding Aegis to the BOW Project bond. Further, Aegis contends that Global breached its contractual duties to Aegis under the Surety Agent Agreement and guidelines.

      Specifically, Aegis avers that, prior to issuing the bond, Mr. Morgan knew but did not disclose to Aegis 1) that CBC was in horrendous financial condition and required financing through a factor, First Surety Financial LLC, for purposes of financing all work on the BOW Project; 2) that CBC had defaulted on a bond (First Sealord) on another job; and 3) that the financial information provided by CBC was falsified, and that the accountant who prepared the CBC financial statements was being investigated for criminal activities. In fact, Aegis later learned that the accountant referenced hereinabove was also the accountant for David Morgan and Global.

      Further, Aegis submits that Global breached the express provisions of the Surety Agent Agreement and the guidelines, by failing to require the issuance of a subcontractor bond for Razz Construction, a subcontractor performing services in excess of $200,000.00 on the BOW Project. In addition, Global breached the Surety Agent Agreement and the guidelines by failing to notify Aegis that the BOW Project was a "design/build" project.

      The total losses attributable to the wrongful conduct of Global with regard to the issuance of the bonds on the BOW Project including the net decision of Judge Mecca in the Lawsuit are not less than $1,189,700.49.

<u>VILLAGE OF SOUTH ORANGE TOWNSHIP</u>

      On or about January 12, 2006, Global submitted a proposal to Aegis seeking Aegis' approval to bond a job in the Village of South Orange Township ("SOT") for the renovations of and additions to a

Jason A. Meisner, Esquire
Coughlin Duffy LLP
February 29, 2016
Page 3 of 4

firehouse (the "SOT Project").  The original contractor had been terminated by SOT.  Global approached Aegis about issuing bonds to complete the SOT Project.  The owner under the bonds was to be Colonial and the principal, Parikh, Inc.  The operative contract was a takeover agreement.

Aegis agreed to the undertaking but with specific conditions.  Aegis agreed to approve the issuance of the bonds on the SOT Project if Global secured the issuance of separate bonds from any subcontractor performing work in excess of $100,000.00.  There were no less than three subcontracts which were to exceed $100,000.00 including plumbing, electrical and HVAC.  Global never procured bonds for any subcontractor of Parikh, Inc.

Aegis began suffering losses on the SOT Project in 2008.  Thereafter, during a meeting in the Harrisburg, Pennsylvania office of Aegis, Aegis representatives learned from Rantik Parikh the principal of Parikh, Inc. that none of his subcontractors were separately bonded as required by Aegis.

In addition, Aegis later learned that Global misrepresented to Aegis the financial condition of Parikh, Inc. and its principals.  Specifically, Global misrepresented to Aegis the value of a home owned by Rantik Parikh; thus, resulting in Aegis receiving a worthless second mortgage.  Global represented to Aegis that the house had a value in the range of $2,000,000.00, which appeared reasonable given its location.  However, in fact, the house was only partially constructed and was not habitable.  Global never advised Aegis of this fact, which would clearly have been material in making any financial decision.

The total current losses on the SOT Project are $542,523.22.

## AEGIS DEMAND

As has been set forth herein, Aegis suffered losses on the SOT Project, BOW Project and the Strober Projects totaling $1,732,223.70.  The conduct of Global is so egregious in each case that Aegis is confident that any reasonable trier of fact would find that the tortious conduct of Global as well as its failure to adhere to the clear contractual requirements between the parties resulted in no less than the losses at issue.  Moreover, Aegis asserts that there is also a case here for punitive damages and attorneys' fees and costs based on Global's self-dealing, misrepresentation, fraud, and breach of fiduciary duty.

In addition to the losses suffered on the SOT Project and BOW Project, Global has failed to pay to Aegis premiums in the amount of $77,632.82 through February 26, 2016.  Aegis thus demands payment of the full amount of unpaid premiums in addition to its other losses.

Notwithstanding the foregoing and based upon the fact that this letter is submitted to you for settlement purposes only and is inadmissible in any court proceeding, Aegis hereby makes demand on Global in the amount of $1,732,223.70, excluding any premium now due and payable.

Further, in conjunction with the demand, Aegis would be agreeable to extending the Effective Date under the Tolling Agreement to July 31, 2016 and submitting all issues between Aegis and Global to mediation before the Honorable Michael B. Fisher.

Jason A. Meisner, Esquire
Coughlin Duffy LLP
February 29, 2016
Page 4 of 4

    Please advise your response to the foregoing within ten (10) days from the date of this letter. If we do not hear from you within that time period, we will presume that your client has no interest in resolving the matter and we will take any and all appropriate action.

Very truly yours,

MICHAEL F.J. ROMANO, ESQUIRE

MFJR/jr

cc: client

*Of Counsel:*

Michael D. Bloom, Esquire
44 Nelson Place, P.O. Box 13
Tenafly, NJ 07670
Telephone: (201) 266-4351
Telefax: (201) 336-9149
Member of NJ, NY, FL & DC Bar

Evan J. Salan, Esquire
52 Newton Avenue, P.O. Box 456
Woodbury, NJ 08096
Telephone: (856) 384-1515
Telefax: (856) 384-6371
Member of NY, NJ, & CA Bar

E

X

H

I

B

I

T

B

# ACORD® GENERAL LIABILITY NOTICE OF OCCURRENCE / CLAIM

| | | DATE (MM/DD/YYYY) |
|---|---|---|
| | | 3/2/2016 |

**AGENCY**
Global Indemnity Insurance Agency, Inc.
20 Highland Avenue

Metuchen        NJ  08840

| **CONTACT NAME:** Tracy Modzelewski |
|---|
| **PHONE (A/C, No, Ext):** (732) 632-2790 |
| **FAX (A/C, No):** (732) 632-2779 |
| **E-MAIL ADDRESS:** tracym@globalindemins.com |
| **CODE:** | **SUBCODE:** |
| **AGENCY CUSTOMER ID:** 00000915 |

| **INSURED LOCATION CODE** | **DATE OF LOSS AND TIME** | | |
|---|---|---|---|
| | 3/2/2016 | 12:00 | X AM / PM |

| **CARRIER** Catlin Specialty Ins. Co. | **NAIC CODE** |
|---|---|

| **POLICY NUMBER** IAL7000831115 |
|---|

## INSURED

**NAME OF INSURED (First, Middle, Last)**
Global Indemnity Insurance Agency, Inc.

| **DATE OF BIRTH** | **FEIN (if applicable)** |
|---|---|

| **PRIMARY PHONE #** ☐ HOME ☒ BUS ☐ CELL | **SECONDARY PHONE #** ☐ HOME ☐ BUS ☐ CELL |
|---|---|
| (732) 632-2790 | |

**INSURED'S MAILING ADDRESS**
20 Highland Avenue

Metuchen        NJ  08840

| **PRIMARY E-MAIL ADDRESS:** |
|---|
| **SECONDARY E-MAIL ADDRESS:** |

## CONTACT          ☐ CONTACT INSURED

**NAME OF CONTACT (First, Middle, Last)**

| **PRIMARY PHONE #** ☐ HOME ☐ BUS ☐ CELL | **SECONDARY PHONE #** ☐ HOME ☐ BUS ☐ CELL |
|---|---|

**WHEN TO CONTACT**

**CONTACT'S MAILING ADDRESS**

| **PRIMARY E-MAIL ADDRESS:** |
|---|
| **SECONDARY E-MAIL ADDRESS:** |

## OCCURRENCE

| **LOCATION OF OCCURRENCE** | **POLICE OR FIRE DEPARTMENT CONTACTED** |
|---|---|
| **STREET:** | |
| **CITY, STATE, ZIP:** | **REPORT NUMBER** |
| **COUNTRY:** | |

**DESCRIBE LOCATION OF OCCURRENCE IF NOT AT SPECIFIC STREET ADDRESS:**

**DESCRIPTION OF OCCURRENCE (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)**

This is the first we are hearing of this new claim. There is a claim attached to this letter that is still in litigation and is unrelated to the claim that needs to be set up.  The new claim is Villiage of South Orange Township, please read the allegations in the claim.  I understand that you select the law firm that will represent us. However, we are requesting that Coughlin Duffy LLP, attorney Jason Meisner handle this claim his phone number is 973-631-6052. He is handling the other claim mentioned in the paperwork.  Please check for conflicts with Coughlin Duffy LLP "see attached received"

## TYPE OF LIABILITY

| **PREMISES: INSURED IS** | ☐ OWNER | ☐ TENANT | |
|---|---|---|---|

**OWNER'S NAME & ADDRESS (If not Insured)**

| **TYPE OF PREMISES** |
|---|
| **PRIMARY PHONE #** ☐ HOME ☐ BUS ☐ CELL **SECONDARY PHONE #** ☐ HOME ☐ BUS ☐ CELL |
| **PRIMARY E-MAIL ADDRESS:** |
| **SECONDARY E-MAIL ADDRESS:** |

| **PRODUCTS: INSURED IS** | ☐ MANUFACTURER | ☐ VENDOR | |
|---|---|---|---|

**MANUFACTURER'S NAME & ADDRESS (If not Insured)**

| **TYPE OF PRODUCT** |
|---|
| **PRIMARY PHONE #** ☐ HOME ☐ BUS ☐ CELL **SECONDARY PHONE #** ☐ HOME ☐ BUS ☐ CELL |
| **PRIMARY E-MAIL ADDRESS:** |
| **SECONDARY E-MAIL ADDRESS:** |

**WHERE CAN PRODUCT BE SEEN?**

# ROMANO GARUBO & ARGENTIERI

*Counselors at Law LLC*

Michael F.J. Romano, Member *
mromano@rgalegal.com

Angelo G. Garubo, Of Counsel **
agarubo@rgalegal.com

Emmanuel J. Argentieri, Member*
eargentieri@rgalegal.com

52 Newton Avenue
P.O. Box 456
Woodbury, NJ 08096
Telephone: (856) 384-1515
Telefax: (856) 384-6371

Louis W. Skinner *
lskinner@rgalegal.com

*Member of the NJ & PA Bar
**Member of the NJ & NY Bar

February 29, 2016

Jason A. Meisner, Esquire
Coughlin Duffy LLP
350 Mount Kemble Avenue
Morristown, New Jersey 07962

**THIS LETTER IS OFFERED FOR SETTLEMENT PURPOSES ONLY AND IS
INADMISSIBLE FOR ANY EVIDENTIARY PURPOSE IN ANY PROCEEDING**

Dear Mr. Meisner:

As you know, this office represents surety Aegis Security Insurance Company ("Aegis"). This will follow up on our various settlement discussions with regard to various claims of Aegis against your client, Global Indemnity Insurance Agency, Inc. ("Global").

On March 18, 2013, Aegis filed a Fourth-Party Complaint against Global in an action titled First Surety Financial, LLC v. Borough of Washington v. Aegis Security Insurance Company, in the Superior Court of New Jersey, Chancery Division, Warren County, Docket No: WRN-L-430-10 (the *"Lawsuit"*). It was agreed that the Lawsuit would go forward to verdict in binding arbitration before Judge Mecca while the Fourth-Party Complaint would be the subject of that certain Tolling Agreement we entered into originally on November 22, 2013 which establishes and defines an Effective Date of March 18, 2013 and which we have continually mutually extended now through March 15, 2016.

The Tolling Agreement covered not only claims actually asserted in the Lawsuit against Global (the *"Asserted Claims"*) but also covered additional claims against Global which were not asserted in the Lawsuit (*"Non-Asserted Claims"*). The Tolling Agreement effectively stayed any and all claims, counter-claims, and cross-claims and the running of any periods of limitation, statutes of limitations and statutes of repose that may relate to the issues and/or causes of action that form the subject matter of the Asserted Claims and Non-Asserted Claims, as of the Effective Date, while the parties attempted to come to a mutually acceptable resolution without resorting to further litigation.

Accordingly, Aegis agreed to, and did voluntarily dismiss its Fourth Party Complaint against Global, without prejudice, subject to the terms of the Tolling Agreement.

As you know, the Lawsuit has resulted in a net decision against Aegis in the amount of $90,860.86.

Aegis is making this demand on Global in an effort to inspire a meaningful dialogue regarding the resolution or mediation of the remaining Asserted Claims *and* Non-Asserted Claims, as a precursor to the institution of litigation on or before March 15, 2016.

Jason A. Meisner, Esquire
Coughlin Duffy LLP
February 29, 2016
Page 2 of 4

     Over the last several years, Aegis has had an opportunity to review various bonds issued by Global which have resulted in substantial losses to Aegis. Amongst those losses were those on the bonds issued to 1) Consolidated Building Corp. on the BOW Municipal Building and Salt Shed Project (the "BOW Project") and 2) Parikh Inc. on the Village of South Orange Township Firehouse Project (the "SOT Project"). Aegis contends that it has also suffered losses on other matters as well but for settlement purposes, it is limiting this demand to those 2 specific projects. The total of the losses suffered by Aegis on these Projects is $1,732,223.70. The total losses are broken down as follows: $1,189,700.49 (BOW Project) and $542,523.21 (SOT Firehouse Project).

## BOROUGH OF WASHINGTON ("BOW")

     On January 1, 2007, Aegis and Global entered into a written Surety Agent Agreement (see attached AEGIS 1) pursuant to which Global became the agent of Aegis with full power to receive and accept proposals for surety bonds wherever Aegis was authorized and licensed to write and issue surety bonds. Pursuant to the Surety Agent Agreement, Aegis bound Global to written guidelines (copies of which are attached as AEGIS 2) which were designed to control Global's decision making under the Surety Agent Agreement.

     David Morgan of Global had a previous relationship with the principals of a company called Consolidated Building Corporation ("CBC"). Global bound Aegis to a bond in favor of CBC on the BOW Project. Aegis contends that Global engaged in fraudulent and tortious conduct by, *inter alia*, breaching its common law duty to act as a reasonable agent in binding Aegis to the BOW Project bond. Further, Aegis contends that Global breached its contractual duties to Aegis under the Surety Agent Agreement and guidelines.

     Specifically, Aegis avers that, prior to issuing the bond, Mr. Morgan knew but did not disclose to Aegis 1) that CBC was in horrendous financial condition and required financing through a factor, First Surety Financial LLC, for purposes of financing all work on the BOW Project; 2) that CBC had defaulted on a bond (First Sealord) on another job; and 3) that the financial information provided by CBC was falsified, and that the accountant who prepared the CBC financial statements was being investigated for criminal activities. In fact, Aegis later learned that the accountant referenced hereinabove was also the accountant for David Morgan and Global.

     Further, Aegis submits that Global breached the express provisions of the Surety Agent Agreement and the guidelines, by failing to require the issuance of a subcontractor bond for Razz Construction, a subcontractor performing services in excess of $200,000.00 on the BOW Project. In addition, Global breached the Surety Agent Agreement and the guidelines by failing to notify Aegis that the BOW Project was a "design/build" project.

     The total losses attributable to the wrongful conduct of Global with regard to the issuance of the bonds on the BOW Project including the net decision of Judge Mecca in the Lawsuit are not less than $1,189,700.49.

## VILLAGE OF SOUTH ORANGE TOWNSHIP

     On or about January 12, 2006, Global submitted a proposal to Aegis seeking Aegis' approval to bond a job in the Village of South Orange Township ("SOT") for the renovations of and additions to a

Jason A. Meisner, Esquire
Coughlin Duffy LLP
February 29, 2016
Page 3 of 4

firehouse (the "SOT Project"). The original contractor had been terminated by SOT. Global approached Aegis about issuing bonds to complete the SOT Project. The owner under the bonds was to be Colonial and the principal, Parikh, Inc. The operative contract was a takeover agreement.

Aegis agreed to the undertaking but with specific conditions. Aegis agreed to approve the issuance of the bonds on the SOT Project if Global secured the issuance of separate bonds from any subcontractor performing work in excess of $100,000.00. There were no less than three subcontracts which were to exceed $100,000.00 including plumbing, electrical and HVAC. Global never procured bonds for any subcontractor of Parikh, Inc.

Aegis began suffering losses on the SOT Project in 2008. Thereafter, during a meeting in the Harrisburg, Pennsylvania office of Aegis, Aegis representatives learned from Rantik Parikh the principal of Parikh, Inc. that none of his subcontractors were separately bonded as required by Aegis.

In addition, Aegis later learned that Global misrepresented to Aegis the financial condition of Parikh, Inc. and its principals. Specifically, Global misrepresented to Aegis the value of a home owned by Rantik Parikh; thus, resulting in Aegis receiving a worthless second mortgage. Global represented to Aegis that the house had a value in the range of $2,000,000.00, which appeared reasonable given its location. However, in fact, the house was only partially constructed and was not habitable. Global never advised Aegis of this fact, which would clearly have been material in making any financial decision.

The total current losses on the SOT Project are $542,523.22.

### AEGIS DEMAND

As has been set forth herein, Aegis suffered losses on the SOT Project, BOW Project and the Strober Projects totaling $1,732,223.70. The conduct of Global is so egregious in each case that Aegis is confident that any reasonable trier of fact would find that the tortious conduct of Global as well as its failure to adhere to the clear contractual requirements between the parties resulted in no less than the losses at issue. Moreover, Aegis asserts that there is also a case here for punitive damages and attorneys' fees and costs based on Global's self-dealing, misrepresentation, fraud, and breach of fiduciary duty.

In addition to the losses suffered on the SOT Project and BOW Project, Global has failed to pay to Aegis premiums in the amount of $77,632.82 through February 26, 2016. Aegis thus demands payment of the full amount of unpaid premiums in addition to its other losses.

Notwithstanding the foregoing and based upon the fact that this letter is submitted to you for settlement purposes only and is inadmissible in any court proceeding, Aegis hereby makes demand on Global in the amount of $1,732,223.70, excluding any premium now due and payable.

Further, in conjunction with the demand, Aegis would be agreeable to extending the Effective Date under the Tolling Agreement to July 31, 2016 and submitting all issues between Aegis and Global to mediation before the Honorable Michael B. Fisher.

Jason A. Meisner, Esquire
Coughlin Duffy LLP
February 29, 2016
Page 4 of 4

     Please advise your response to the foregoing within ten (10) days from the date of this letter. If we do not hear from you within that time period, we will presume that your client has no interest in resolving the matter and we will take any and all appropriate action.

Very truly yours,

MICHAEL F.J. ROMANO, ESQUIRE

MFJR/jr

cc: client

*Of Counsel:*

Michael D. Bloom, Esquire
44 Nelson Place, P.O. Box 13
Tenafly, NJ 07670
Telephone: (201) 266-4351
Telefax: (201) 336-9149
Member of NJ, NY, FL & DC Bar

Evan J. Solan, Esquire
52 Newton Avenue, P.O. Box 456
Woodbury, NJ 08096
Telephone: (856) 384-1515
Telefax: (856) 384-6371
Member of NY, NJ, & CA Bar

EXHIBIT C

SLA #G0676-15-04886



Policy Number: IAL-700083-1115

Previous Policy Number: IAP-692056-1114

# INSURANCE AGENCY PROFESSIONAL LIABILITY
## INSURANCE POLICY DECLARATIONS

THIS POLICY IS WRITTEN BY A SURPLUS LINES INSURER AND IS NOT SUBJECT TO THE FILING OR APPROVAL REQUIREMENTS OF THE NEW JERSEY DEPARTMENT OF BANKING AND INSURANCE. SUCH A POLICY MAY CONTAIN CONDITIONS, LIMITATIONS, EXCLUSIONS AND DIFFERENT TERMS THAN A POLICY ISSUED BY AN INSURER GRANTED A CERTIFICATE OF AUTHORITY BY THE NEW JERSEY DEPARTMENT OF BANKING AND INSURANCE. THE INSURER HAS BEEN APPROVED BY THE DEPARTMENT AS AN ELIGIBLE SURPLUS LINES INSURER, BUT THE POLICY IS NOT COVERED BY THE NEW JERSEY INSURANCE GUARANTY FUND, AND ONLY A POLICY OF MEDICAL MALPRACTICE LIABILITY INSURANCE AS DEFINED IN N.J.S.A. 17:30D-3D OR A POLICY OF PROPERTY INSURANCE COVERING OWNER-OCCUPIED DWELLINGS OF LESS THAN FOUR DWELLING UNITS ARE COVERED BY THE NEW JERSEY SURPLUS LINES GUARANTY FUND.

| INSURER | UNDERWRITING OFFICE | PRODUCER |
|---|---|---|
| Catlin Specialty Insurance Company<br>160 Greentree Drive<br>Suite 101<br>DOVER, DE 19904 | Professional Risk Facilities, Inc.<br>113 S. Service Road<br>Jericho, NY 11753 | Hull & Company<br>1050 Wall Street West, Suite 330<br>LYNDHURST, NJ 07071 |

THIS IS A "CLAIMS MADE AND REPORTED" POLICY. SUBJECT TO ITS TERMS AND PROVISIONS, THIS POLICY ONLY AFFORDS COVERAGE FOR CLAIMS FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE INSURER IN WRITING DURING THE POLICY PERIOD OR DISCOVERY PERIOD, IF APPLICABLE. IN ADDITION, DEFENSE COSTS ARE INCLUDED IN AND WILL REDUCE THE LIMITS OF LIABILITY.

PLEASE READ THIS ENTIRE POLICY CAREFULLY. CONSULT YOUR BROKER OR OTHER REPRESENTATIVE IF YOU DO NOT UNDERSTAND ANY TERMS OR PROVISIONS OF THIS POLICY.

Terms appearing in **bold** are defined in the Policy.

| Item 1. Named Insured: | Global Indemnity Insurance Agency |
|---|---|

| Mailing Address: | 20 Highland Ave<br>METUCHEN, NJ 08840 |
|---|---|

| Item 2. Policy Period: | From: 11/26/2015    To: 11/26/2016<br>at 12:0a a.m. (local time at the address stated in Item 1.) |
|---|---|

Item 3.  Limits of Insurance:
A.  each Claim — $2,000,000
B.  in the Aggregate — $2,000,000
C.  Regulatory Proceedings — $25,000
D.  Litigation Expense — $250 per day each Claim/$5,000 in the Aggregate
E.  Subpoena Expenses — $25,000

Item 4.  Retention Amount     $50,000 each Claim

Item 5.  Retroactive Date     11/26/1990

Item 6.  Predecessor Firm(s):

| Item 7. Premium Development: | $74,800 |
|---|---|

| Item 8. Endorsements Applicable to Coverage at Inception of Policy:  See ABAP 302 1007 |
|---|

THESE DECLARATIONS, TOGETHER WITH THE COMPLETED AND SIGNED APPLICATION FOR THIS POLICY, ALL MATERIALS SUBMITTED THEREWITH OR MADE A PART THEREOF AND THE POLICY FORM ATTACHED HERETO, CONSTITUTE THE POLICY.

This Policy shall not be valid unless signed by a duly authorized representative of the **Insurer.**

Countersigned: <u>01/05/2016</u>                                by_____
                                                                            Authorized Representative

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

## SCHEDULE OF FORMS AND ENDORSEMENTS

Named Insured: Global Indemnity Insurance Agency

| Policy Number | Policy Period |
|---|---|
| IAL-700083-1115 | From 11/26/2015     To 11/26/2016 |

### Forms and Endorsements

PLIA001 0115 Insurance Agency Professional Liability Declarations

PLIA050 0211 Insurance Agency Professional Liability Insurance Policy

ABAP 900 0715 - Service of Suit

ABAP 401 0715 - In Witness Endorsement

PLIA410 1111 - Minimum Earned Premium Endorsement

PLIA607 0711 - Specific Claim or Matter Exclusion Endorsement

PLIA612 0414 - Related Party Exclusion Endorsement

PLIA614 0215 - Telecommunications Exclusion Endorsement

**INSURANCE AGENCY
PROFESSIONAL LIABILITY POLICY**



THIS IS A "CLAIMS MADE AND REPORTED" POLICY. SUBJECT TO ITS TERMS AND PROVISIONS, THIS POLICY ONLY AFFORDS COVERAGE FOR CLAIMS FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE INSURER IN WRITING DURING THE POLICY PERIOD OR DISCOVERY PERIOD, IF APPLICABLE. IN ADDITION, DEFENSE COSTS ARE INCLUDED IN AND WILL REDUCE THE LIMITS OF LIABILITY.

PLEASE READ THIS ENTIRE POLICY CAREFULLY. CONSULT YOUR BROKER OR OTHER REPRESENTATIVE IF YOU DO NOT UNDERSTAND ANY TERMS OR PROVISIONS OF THIS POLICY.

In consideration of the payment of premiums and in reliance upon the statements contained in the **Application,** which is incorporated into this Policy and forms part hereof, the Insurer identified on the Declarations, herein called the "**Insurer,**" agrees as follows:

**I.      Insuring Agreement**

The **Insurer** shall pay, on behalf of an **Insured, Loss** which the **Insured** becomes legally obligated to pay because of a **Claim** that is both made against the **Insured** and reported to the **Insurer** in writing during the **Policy Period** or Discovery Period, if applicable, for a **Wrongful Act** committed solely in the rendering or failing to render **Professional Services** for a **Client,** provided:

1.      Such **Wrongful Act** occurred on or after the **Retroactive Date;** and

2.      As of the inception date of this Policy, or the first policy issued to the **Named Insured** by the **Insurer** or any of the **Insurer's** parents, subsidiaries or affiliates of which this Policy is the last in a series of continuously renewed policies, no **Insured** had knowledge or reasonable basis upon which to anticipate that the **Wrongful Act** or any **Interrelated Wrongful Act** could result in a **Claim.**

**II.     Defense and Settlement**

The **Insurer** shall have the right and duty to defend any civil litigation or arbitration that constitutes a **Claim** against an **Insured** that is covered by this Policy. At its discretion, the **Insurer** may appoint counsel to represent the **Insureds** for any other matters that constitute **Claims** that are covered by this Policy. The **Insurer,** however, does not have a duty to defend such other matters. The **Insurer** shall appoint counsel of its selection to defend the **Insureds** and pay associated **Defense Costs.**

The **Insurer** has the right to investigate, conduct negotiations and with the **Insureds** written consent, settle any **Claim** as it deems expedient.  If the **Insured** refuses to consent to a settlement or compromise recommended by the **Insurer** and acceptable to the claimant, then the **Insurer's** Limit of Liability under this Policy with respect to such **Claim** shall be reduced to the amount of **Loss** for which the **Claim** could have been settled, including all **Defense Costs** incurred up to the time the **Insurer** made its recommendation to the **Insured.**

**III.    Additional Coverages**

A.      Defense Costs for Regulatory Proceedings

1.      Subject to the Regulatory Proceedings Limit of Liability set forth in Item 3.C. of the Declarations, which is in addition to the each **Claim** and Aggregate Limits of Liability set forth in Item 3.A. and 3.B. of the Declarations, the **Insurer** shall pay on behalf of the **Insured Defense Costs** which the **Insured** shall become legally obligated to pay because of a **Regulatory Proceeding** first commenced against the **Insured** during the **Policy Period** for a **Wrongful Act** committed on or after

PLIA 050 0211                                                                              Page 1 of 14

the **Retroactive Date** by an **Insured** solely in the rendering of or failing to render **Professional Services** for a **Client.**

    2.    The **Insurer** shall not be liable for any direct or indirect **Loss**, losses, fines, penalties or any form of award or relief whatsoever resulting from a **Regulatory Proceeding.**

B.    Litigation Expense Reimbursement

Subject to the Litigation Expense Limit of Liability set forth in Item 3. D. of the Declarations, which is in addition to the each **Claim** and Aggregate Limits of Liability set forth in Item 3.A. and B. of the Declarations, the **Insurer** shall reimburse the **Insured's** actual loss of earnings and reasonable expenses incurred when the **Insured** attends a hearing, deposition or trial at the request of the **Insurer** in the course of defending an otherwise covered **Claim.**

C.    Subpoena Expenses

Subject to the Subpoena Expenses Limit of Liability set forth in Item 3.E. of the Declarations, which is in addition to the each **Claim** and Aggregate Limits of Liability set forth in Item 3.A. and 3.B. of the Declarations, the **Insurer** shall, at the **Insured's** request, retain counsel and pay such counsel's reasonable and necessary fees and costs to advise the **Insured** regarding the production of documents and/or represent the **Insured** during the preparation and giving of testimony, in response to a subpoena not involving a **Claim** against any **Insured** that is both served on the **Insured** and reported to the **Insurer** in writing during the **Policy.**

D.    Any notice to the **Insurer** of a **Regulatory Proceeding** or subpoena shall be deemed notice of a **Wrongful Act** under Section VI.B. of the Policy.

IV.    **Definitions**

For purposes of this Policy, the terms in bold type shall have special meanings that are designated below. All other terms shall have those meanings commonly understood by professionals who are engaged in the business of insurance:

A.    **Application** means all signed applications and any attachments and materials submitted therewith for this Policy and for any policy in an uninterrupted series of policies issued by the **Insurer** or any of its **Affiliate of the Insurer** of which this Policy is a renewal or replacement. All such applications, attachments, materials and information are deemed attached to and incorporated into this Policy.

B.    **Affiliate of the Insurer** means any insurer controlling, controlled by or under common control with the **Insurer.**

C.    **Claim** means a written demand received by any **Insured** for monetary damages (including pleadings received in a civil litigation, arbitration, mediation or alternative dispute resolution) for an actual or alleged **Wrongful Act.** A **Claim** does not include the following:

    1.    a demand for declaratory, injunctive or other non-monetary relief;
    2.    any form of criminal proceeding;
    3.    any demand by a governmental or quasi-governmental official or agency or any self-regulatory official or agency except if the agency or official is a **Client** of the **Insured** in connection with the rendering of **Professional Services.**

D.    **Client** means an individual, company or entity for whom or which an **Insured** renders **Professional Services** to gain monetary compensation.

E. **Company** means the **Named Insured** and any **Subsidiary** created or acquired on or before the inception date and time stated in Item 2. of the Declarations or, subject to General Conditions XI.E., during the **Policy Period**, including any such company as a debtor in possession under United States bankruptcy law or equivalent status under foreign law.

F. **Defense Costs** means reasonable and necessary fees, costs and expenses incurred by or at the direction of the **Insurer** in the defense of a **Claim**, pre and post judgment interest, and the premium for appeal, attachment or similar bonds. The **Insurer** shall have no obligation to apply for or provide such bonds. **Defense Costs** shall not include any remuneration, regular or overtime wages, salaries, benefits or fees of the directors, officers, managers and employees, of the **Insured** or **Insurer** or fees and expenses of independent adjusters.

G. **Insured** means:

    1. the **Company** and any **Predecessor Firm**;

    2. any present or former partner, director, officer, manager, employee or independent contractor of the **Company** or a **Predecessor Firm** solely while acting on behalf of the **Company** or a **Predecessor Firm**;

    3. any present or former **Licensed Producer** solely while acting on behalf of the **Company** or a **Predecessor Firm**;

    4. any natural person who during the **Policy Period** becomes:

        a. an officer, employee, independent contractor or **Licensed Producer** and becomes a party to a valid contract with or employed by the **Company**; or

        b. affiliated with the **Company** as a partner, director or manager,

    shall be an **Insured** upon the effective date of such contract, employment or affiliation provided that if they are a **Licensed Producer** that they are licensed with any governmental or regulatory entity charged with regulating the solicitation and sale of any **Professional Services** on:

        a. the effective date of their contract, employment or affiliation with the **Company**; and

        b. any date on which a **Wrongful Act** is alleged to have occurred.

    5. the lawful spouse of any natural person described herein, but solely with respect to a **Claim** arising out of such status as spouse, and provided that it does not include any **Wrongful Acts** by such spouse;

    6. the estate, heirs, executors, administrators or legal representatives of an **Insured** in the event of such **Insureds** death, incapacity or bankruptcy but only to the extent such **Insured** would otherwise be provided coverage under this Policy.

H. **Interrelated Wrongful Acts** means any **Wrongful Acts** that are:

    1. similar, repeated or continuous; or

    2. connected by reason of any common fact, circumstance, situation, transaction, causality, event, decision or policy or one or more series of facts, circumstances, situations, transactions, casualties, events, decisions or policies.

I. **Licensed Producer** means any natural person who is a:

    1. Licensed Property and Casualty Insurance Agent, Broker, General Agent, Brokerage General Agent, Surplus Lines Broker, Wholesaler, Retailer, MGA, MGU or Program Administrator; or

2.  Licensed Accident and Health Insurance Agent, Broker, General Agent or Brokerage General Agent, Surplus Lines Broker, Wholesaler, Retailer, MGA, MGU or Program Administrator,

while acting on behalf of and within the scope of his or her duties for the **Company** provided they are licensed by any federal, state or local governmental or regulatory entity charged with regulating the solicitation and sale of **Professional Services** on the:
    a.  Effective Date of this Policy, and
    b.  Any date on which a **Wrongful Act** is alleged to have occurred.

J.    **Loss** means **Defense Costs** and compensatory monetary damages, judgments, settlements or awards that an **Insured** is legally obligated to pay on account of a covered **Claim**.

**Loss** includes taxes, fines or penalties incurred by a third party and included in such third party's **Claim** against the **Insured**.

**Loss** also includes punitive or exemplary damages to the fullest extent permitted by the law of any state or jurisdiction where: (1) the punitive or exemplary are awarded or imposed; (2) any **Wrongful Act** underlying the **Claim** was committed; (3) either the **Insurer** or the **Insured** is incorporated, has its principal place of business or resides; or (4) this Policy was issued or became effective.

**Loss** does not include:

1.    civil or criminal fines or penalties imposed by law or regulation;
2.    the multiplied portion of a multiplied damage award;
3.    the return, withdrawal, or restitution of fees, commissions, expenses or charges;
4.    costs incurred as a result of any non-pecuniary or injunctive relief;
5.    taxes assessed against the **Insured**; or
6.    matters which are deemed uninsurable by law.

K.    **MEWA** means a Multiple Employer Welfare Arrangement, as the term is defined in the Employee Retirement Income Security Act of 1974, Public Law 93-406, and any amendments thereto.

L.    **Named Insured** means the entity stated in Item 1. of the Declarations..

M.    **Personal Injury** means injury or damage arising out of:

1.    false arrest, detention or imprisonment;
2.    malicious prosecution;
3.    libel or slander or other defamatory or disparaging material or a publication or utterance in violation of an individual's right of privacy, including utterances made in the course of or related to any form of advertising activities conducted by or on behalf of an **Insured**; or
4.    wrongful entry or eviction or other invasion of the right to private occupancy;

solely in the rendering of or failing to render **Professional Services**.

N.    **Policy Period** means the period of time from the inception date and time stated in Item 2. of the Declarations to the earlier of the expiration date and time stated in Item 2. of the Declarations or the effective date and time of the cancellation of this Policy.

O.    **Pollutants** mean:

1.    any substance that exhibits any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or any foreign, state, county, municipal or local counterpart thereto, including, but not limited to, solids, liquids, gaseous or

thermal irritants, contaminants or smoke, vapor, dust, soot, fumes, acids, alkalis, chemicals or waste materials (including but not limited to materials to be recycled, reconditioned or reclaimed, sewage or waste water, nuclear materials, infectious or medical waste); or

2. any air emission, magnetic or electric waves or emissions, odor, oil or oil products, asbestos or asbestos products, fibers, mold, spores, fungi, germs, bacteria, viruses or any noise.

P. **Predecessor Firm** means any entity listed in Item 6. of the Declarations.

Q. **Professional Services** are solely limited to the following activities undertaken pursuant to a valid license in both the state where an **Insured** is located and the state where a **Client** is located or transaction is undertaken:

1. the soliciting, placing, selling or servicing of any of the following:
   a. property and casualty insurance;
   b. life insurance, accident and health insurance, long-term care insurance, disability income insurance or fixed annuities;
   c. variable annuities, flexible and scheduled premium annuities and variable life insurance;
   d. employee benefit plans, including but not limited to Group Plans, Group Ordinary Pension or Profit Sharing Plans, 401(K) or 501(b) Plans, Retirement Annuities, Life, Accident and Health or Disability Plans;

2. insurance consulting and expert witness services for a **Client** in connection with insurance related matters;

3. appraising real or personal property for a **Client** in connection with the products set forth above;

4. arrangement of premium financing for a **Client** in connection with the placement of insurance coverage;

5. safety consulting, loss control services, teaching insurance/risk management courses/seminars and risk management services for a **Client** in connection with the products set forth above;

6. claims adjusting and administration for a **Client** in connection with the products set forth above; and

7. services as a notary public.

**Professional Services** shall not include the sale, attempted sale, servicing or any activities in connection with (i) mutual funds; (ii) securities, including but not limited to, stocks, bonds, limited partnerships, promissory notes, viatical settlements, leasing arrangements, real estate trusts, and investment participation or pooling arrangements.

**Professional Services** shall not include the **Insured** acting as a:

1. Third-party claims administrator;
2. Financial planner or advisor;
3. Registered Investment Advisor; or
4. Registered Representative.

R. **Regulatory Proceeding** means a proceeding by a state or other regulatory or disciplinary official, board or agency to investigate charges of professional misconduct by the **Insured** solely in the rendering of or failing to render **Professional Services**.

S. **Retroactive Date** means either 1. or 2. below:

1. For all **Insureds** the Retroactive Date shown in Item 5. of the Declarations, provided that any **Insured** was employed by or contracted or affiliated with the **Company** on the **Retroactive Date** shown in the Declarations.

2. For any **Insured** who was not employed by or contracted or affiliated with the **Company** on the **Retroactive Date** shown in Item 5. of the Declarations, the date

on which the **Insured** was first employed by or contracted or affiliated with the **Company**.

T. **Subsidiary** means any corporation or limited liability company during any time in which the **Named Insured** owns, directly or indirectly through one or more of its **Subsidiaries**, more than fifty percent (50%) of the outstanding stock or other interest representing the present right to vote, designate or select a majority of the board of directors of a corporation or the management board of a limited liability company.

U. **Wrongful Act** means a negligent act, error or omission or **Personal Injury** committed by an **Insured** or any natural person for whose **Wrongful Acts** the **Insured** is legally responsible solely in the rendering of or failing to render **Professional Services**.

V. **Exclusions**

This Policy shall not apply to and the **Insurer** shall not pay **Loss** for any **Claim**:

A. for bodily injury, sickness, disease or damage to or destruction of any tangible property, including loss of use thereof;

B. brought or maintained, directly or indirectly, by or on behalf of:

    1. an **Insured**;
    2. any entity other than the **Company** in which any **Insured** was or is a partner, director, officer, manager or employee, or which an **Insured** operates or manages; or
    3. any entity which an **Insured** owns, directly or indirectly, outstanding securities representing more than ten percent (10%) of the voting power for election of directors if the securities of such entity are publicly traded or outstanding securities representing more than thirty percent (30%) of the voting power for election of directors if the securities of such entity are privately held;

C. arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving the placement of insurance on any property in the care, custody or control of the **Insured** at any time;

D. arising out of, based upon or in any way involving any fact, circumstance or situation which has been the subject of any written notice given under any policy of which this Policy is a direct or indirect renewal or replacement or any other policy which preceded this Policy;

E. arising out of, based upon or in any way involving any known prior or pending litigation against any **Insured** filed on or before the Effective Date of this Policy or under any other policy of which this Policy is a direct or indirect renewal or replacement, whichever is earlier, or which is related in any way to the same or substantially the same facts, circumstances or situations which are the subject of or the basis for such prior and pending litigation;

F. arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving any actual or alleged dishonest, purposeful, malicious, fraudulent or criminal act or willful violation of any federal, state or local statute, by, at the direction of or with the knowledge of any **Insureds** or any gaining of profit, remuneration or monetary advantage to which any **Insureds** are not legally entitled; however, the **Insurer** shall continue to defend the **Insureds** that are alleged to have committed such acts, but the **Insureds** shall reimburse the **Insurer** for **Defense Costs** if such conduct is established as a matter of fact in a civil, criminal, or alternative dispute resolution proceeding or is admitted by the **Insureds**;

    provided that for the purposes of determining the applicability of Exclusion F., any actual or alleged dishonest, purposeful, malicious, fraudulent or criminal act or willful violation of

any federal, state or local statute committed by any natural person who was, now is or shall be an officer, employee, independent contractor or member of the **Company** shall not be imputed to any other officer, employee, independent contractor or member of the **Company**, but such dishonest, purposeful, malicious, fraudulent or criminal act or willful violation of any federal, state or local statute shall be imputed to the **Company**.

G.    arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving:

    1.    any actual or alleged commingling of or failure to collect or safeguard funds; or
    2.    any disputes with another agent or broker, including but not limited to commissions, fees, client lists or entitlements.

H.    arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving any actual or alleged liability of others assumed by an **Insured** under an agreement, contract, guarantee or warranty unless the **Insured** would be liable in the absence of such agreement, contract, guarantee or warranty;

I.    arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving any actual or alleged rendering of services as an actuary, accountant, attorney, enrolled agent, tax advisor, tax preparer, real estate agent, real estate broker, third-party administrator, financial planner or adviser, Registered Investment Adviser, securities Registered Representative or broker/dealer, regardless of whether such services are incidental to the rendering of **Professional Services**;

J.    arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving any actual or alleged sale, attempted sale, servicing, advice or planning with respect to any form of insurance placed directly or indirectly with any organization, entity or vehicle of any kind, nature or structure which is not licensed or authorized to do business in the state or jurisdiction with authority to regulate such business; however, this Exclusion shall not apply to a **Claim** based upon or arising out of the placement of insurance or coverage with an eligible surplus lines insurer in the state or jurisdiction with authority to regulate such business;

K.    arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving insolvency, receivership, conservatorship, liquidation, bankruptcy or inability to pay:

    1.    of any company, organization, entity, vehicle or arrangement of any nature in which any **Insureds** placed, recommended to be placed or obtained coverage or alleged coverage; however, this Exclusion shall not apply to a **Claim** based upon or arising out of the insolvency, receivership, conservatorship, liquidation, bankruptcy or inability to pay of any (a) insurance company rated by A.M. Best as B+ or better at the time when the **Insureds** placed such coverage; or (b) municipal, state or federal governmental body; or
    2.    of the **Insured**;

L.    arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving any benefit plan, insurance program, organization, association or trust owned or sponsored by any **Insureds** or in which any **Insured** is a participant, trustee or named fiduciary;

M.    arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving the design, implementation, ownership, formation, operation or administration of any health maintenance organization, employee benefit plan, preferred provider organization, insurance company, captive, risk retention group, self-insurance program or purchasing group;

N.    arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving actual or alleged unfair competition, restraint of trade, misuse of

confidential or proprietary information or copyright, patent, trade mark or trade secret infringement, or illegal, improper or deceptive advertisement of **Professional Services;**

O.  arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving any employment-related **Wrongful Acts** or any discrimination on any basis as defined by federal, state or local statute, regulation, law or ordinance; provided, however, this exclusion does not apply to the soliciting, placing, selling or servicing of insurance for a **Client** of the **Insured;**

P.  arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving:

     a.    the creation, distribution, sale, licensing, installation or maintenance of any computer program, website or software; or

     b.    the unauthorized accessing, viewing, copying, dissemination, transmission or use of electronic data or systems, or proprietary, privileged, confidential or non-public material, information or intellectual property in any form by any person, even if such activity is characterized as theft and whether or not such unauthorized activity is by or on behalf of the **Insured** or by or on behalf of any one else;

Q.  arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving any notarized certification or acknowledgement of a signature without the physical appearance before the **Insured** of the person who is, or claims to be, the person signing the instrument;

R.  arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving:

     a.    the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants** and any consultation, advice, sale, marketing, appraising, or financing in connection therewith; or

     b.    any direction to test for, treat, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants** and any consultation, advice, sale, marketing, appraising, or financing in connection therewith;

provided, however, this exclusion does not apply to the soliciting, placing, selling or servicing of insurance for a **Client** of the **Insured;**

S.  arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving any employee benefit plan or pension plan, including violation of the Employee Retirement Income Security Act of 1974, and any amendments thereto, or similar federal, state or local statutory or common law or any rules and regulations promulgated hereunder; provided, however, this exclusion does not apply to the soliciting, placing, selling or servicing of insurance for a **Client** of the **Insured;**

T.  arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving any actual or alleged sale, attempted sale, servicing or advice with respect to:

     1.    any **MEWA;**

     2.    Voluntary Employee Beneficiary Associations, within the meaning of the Employee Retirement Income Security Act of 1974 and amendments thereto; or

     3.    any similar arrangements and associations involving the pooling of funds for the provision of benefits of any nature; or

     4.    a Professional Employer Organization, or any other similar organization;

that is self-funded in whole or in part;

U.  arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving:

PLIA 050 0211                                                                                    Page 8 of 14

1.  any actual or alleged guarantees, promises or warranties as to interest rates, market values, earnings, future values or future premiums or payments in connection with insurance or annuities;

2.  a violation of any securities laws, including provisions of the Securities Act of 1933 or Securities Exchange Act of 1934, and any amendments thereto, or any state blue sky or securities law or similar state or federal securities related statute and any order or regulation issued pursuant to the foregoing statutes; provided, however, this exclusion does not apply to the soliciting, placing, selling or servicing of insurance for a **Client** of the **Insured**;

3.  the recommendation, sale, marketing, development or establishment of life settlements, structured settlements, viatical settlements or viatical investment pools.

V.  arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving any unauthorized access to, failure, malfunction and/or breakdown of any computer, electrical, electronic or mechanical systems, or machines.

## VI. Limits of Liability and Retentions

### A. Limit of Liability

1.  Limit of Liability Each **Claim**:  The Limit of Liability of the **Insurer** for all **Loss**, including **Defense Costs**, for each **Claim** both first made and reported during the **Policy Period** and Discovery Period, if applicable, shall not exceed the amount stated in Item 3. A. of the Declarations for Each **Claim**.

2.  Limit of Liability in the Aggregate for the Policy Period:  The Limit of Liability of the **Insurer** for all **Loss**, including **Defense Costs**, for all **Claims** both first made and reported during the **Policy Period** and Discovery Period, if applicable, shall not exceed the amount stated in Item 3. B. of the Declarations as the Aggregate for the **Policy Period**.

3.  Regulatory Proceedings Limit of Liability:  The Regulatory Proceedings Limit of Liability set forth in Item 3.C. of the Declarations is the maximum amount payable under the additional coverage provided at Section III.A. of the Policy regardless of the number of **Regulatory Proceedings** initiated against **Insureds** during the **Policy Period** or the number of **Insureds** involved in such proceedings.

4.  Litigation Expense Limit of Liability:  The Litigation Expense Limit of Liability set forth in Item 3.D. of the Declarations is the maximum amount payable in the aggregate for all **Insureds** under the additional coverage provided at Section III.B. of the Policy.

5.  Subpoena Expenses Limit of Liability:  The Subpoena Expenses Limit of Liability set forth in Item 3.E. of the Declarations is the maximum amount payable under the additional coverage provided at Section III.C. of the Policy regardless of the number of subpoenas served on **Insureds** during the **Policy Period** or the number of **Insureds** subject to subpoenas.

### B. Retention

The Retention Amount stated in Item 4. of the Declarations is applicable to each **Claim** and applies to the payment of **Loss**, including **Defense Costs**. The Retention Amount shall be paid by the **Named Insured** and shall be uninsured and remain uninsured during the **Policy Period**.  The Limits of Liability set forth in Items 3.A. and 3.B. of the Declarations are in addition to and in excess of the Retention Amount.  No Retention Amount shall apply with respect to the additional coverages provided pursuant to Section III. of the Policy.

**VII.    Notice and Cooperation**

A.    As a condition precedent to the obligations of the **Insurer** under this Policy, the **Insureds** shall give the **Insurer** written notice of **Claims** made against the **Insureds** as soon as practicable during the **Policy Period**, or Discovery Period (if applicable), but in no event later than sixty (60) days after the end of the **Policy Period** of any **Claim** made against the **Insured**.

B.    The **Insured** shall furnish the **Insurer** with copies of demands, reports, investigations, pleadings and related papers, and provide other such information, assistance and cooperation as the **Insurer** may reasonably request in the investigation, settlement and defense of a **Claim**.

C.    The **Insured** shall further cooperate with the **Insurer** and do whatever is necessary to secure and affect any rights of indemnity, contribution or apportionment that the **Insured** may have.

D.    All written notices provided for in this Policy shall be in writing and addressed as provided in the claims notice attached to this Policy.

**VIII.   Notice of Circumstances Giving Rise to a Claim**

A.    If during the **Policy Period**, the **Insureds** become aware of a specific **Wrongful Act** which reasonably may be expected to give rise to a **Claim** being made against the **Insureds** and give written notice to the **Insurer** of the specific **Wrongful Act**, the reasons for anticipating such a **Claim**, the identities of the potential claimants and the **Insureds** allegedly responsible for such specific **Wrongful Act**, the amount of actual or potential damages, and the circumstances by which the **Insureds** first became aware of such specific **Wrongful Act**, then any **Claim** subsequently made against the **Insureds** arising out of such specific **Wrongful Act**, shall be deemed to have been made at the time such notice was received by the **Insurer**.

B.    The **Insureds** shall give notice to the **Insurer** under this Section at the address set forth in the claims notice attached to this policy.

**IX.    Single Claim and Retention/Interrelated Wrongful Acts**

All **Claims** based upon or arising out the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be considered a single **Claim** and each such single **Claim** shall be deemed to have been made on the earlier of the following:

A.    when the earliest **Claim** arising out of such **Wrongful Act** or **Interrelated Wrongful Acts** was first made; or

B.    when notice was provided to the **Insurer** pursuant to Section VIII.B. herein concerning a **Wrongful Act** giving rise to such **Claim**.

**X.     Discovery Period**

A.    Automatic Discovery Period

If the **Named Insured** cancels or if the **Insurer** or the **Named Insured** refuses to renew this Policy, the **Insured** shall have a period of sixty (60) days after the expiration of the **Policy Period** to report to the **Insurer** any **Claim** which is first made during said sixty (60) day period and arises out of a **Wrongful Act** committed on or after the **Retroactive Date** and prior to the end of the **Policy Period**. Such period shall be referred to as the "Automatic Discovery Period".

B.    Optional Discovery Period

PLIA 050 0211                                                                Page 10 of 14

1.  If the **Insurer** or **Named Insured** cancels or refuses to renew this Policy, the **Named Insured** shall have the right, upon payment of additional premium in the amount of either:

    a.  125% of the premium stated in Item 7. of the Declarations, to an extension of the coverage granted by this Policy with respect to any **Claim** first made during the period of 12 months immediately following the effective date of such cancellation or non-renewal, or

    b.  175% of the premium stated in Item 7. of the Declarations, to an extension of the coverage granted by this Policy with respect to any **Claim** first made during the period of 36 months immediately following the effective date of such cancellation or non-renewal;

    but only with respect to any **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this Policy.  Such period shall be referred to as the "Optional Discovery Period".

2.  The right to purchase the Optional Discovery Period shall terminate, however, unless the **Insurer** receives within thirty (30) days of the effective date of cancellation or non-renewal, written notice of such election together with the additional premium due.

3.  The additional premium for the Optional Discovery Period shall be fully earned at the inception of the Optional Discovery Period.  The Option Discovery Period is not cancelable.

4.  The first sixty (60) days of the Optional Discovery Period, if purchased, shall run concurrently with the Automatic Discovery Period.

C.  If the **Insurer** cancels this Policy because the **Named Insured** failed to pay a premium or other amounts when due or the **Insureds** are not in compliance with the terms and conditions of the Policy, the **Insureds** shall not have the right to the Automatic Discovery Period or to purchase the Optional Discovery Period as described in paragraphs A. and B. above.

D.  The quotation of a different premium, retention amount, limit of liability or policy terms or conditions for renewal shall not constitute a cancellation or nonrenewal for purposes of paragraphs A. and B. above.

E.  Claims which are properly reported during the Discovery Period will be deemed to have been made on the last day of the **Policy Period**.

F.  Notwithstanding any of the provisions of this Policy, the Discovery Period provided herein shall not apply if an **Insured** has other insurance that applies to a **Claim** in whole or in part.

G.  The Discovery Period provided herein shall not reinstate, increase or affect the applicable Limits of Liability or the **Policy Period**.

XI.  **General Conditions**

A.  Termination/Cancellation

1.  The coverage afforded by this Policy shall terminate upon the earlier of:

    a.  the Expiration Date of the **Policy Period** as stated in Item 2. of the Declarations; or

    b.  receipt by the **Named Insured** of written notice by the **Insurer** that the Policy is terminated because of a failure to pay a premium when due or as provided by Section XI.A.3., below.

2.      Other than for failure to pay a premium when due, the **Insurer** may cancel this Policy by providing written notice to the **Named Insured** at the address shown in Item 1. of the Declarations with the effective date of termination being not less than sixty (60) days thereafter. Proof of mailing the notice of cancellation shall be sufficient proof of such notice. In such event, the **Named Insured** shall receive a return of premium to be computed on a pro rata basis proportional to the length of time from the inception date of the **Policy Period** to the termination date.

3.      The **Insurer** may cancel this Policy because of failure to pay a premium when due by providing written notice to the **Named Insured** at the address shown in Item 1. of the Declarations with the effective date of cancellation being not less than ten (10) days thereafter. Proof of mailing the notice of termination shall be sufficient proof of such notice.

4.      The **Named Insured** may cancel the Policy by providing written notice to the **Insurer** at the address stated in Policy Declarations with the effective date of termination being not less than thirty (30) days thereafter. Proof of mailing the notice of termination shall be sufficient proof of such notice. If the **Named Insured** terminates the Policy, the **Insurer** shall retain the customary short rate proportion of the premium.

B.      Mediation of Claims

If a **Claim** is fully and finally resolved with the **Insurer's** consent through voluntary mediation within one year from the date such **Claim** is first made, the Retention Amount for such **Claim** shall be reduced by fifty percent (50%) up to a maximum of $25,000.

C.      Action Against the Insurer

1.      No action shall be taken against the **Insurer** unless, as a condition precedent thereto, the **Insureds** have fully complied with all the terms and provisions of this Policy. In addition, no action shall be taken against the **Insurer** until the amount of any **Insured's** obligation or liability to a third party has been finally determined by an award or judgment against any **Insured** in an actual adjudicatory proceeding.

2.      No person, organization or entity shall have the right under this Policy to join any **Insureds** in any action or proceeding against an **Insurer** to determine the **Insurer's** liability nor shall the **Insurer** be impleaded in an action or proceeding by any **Insureds** or his/her/its legal representative.

D.      Change of Control of the Named Insured

If during the **Policy Period**, the **Named Insured** consolidates with or merges into, or sells all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert, or any person or entity or group of persons or entities acting in concert shall acquire an amount of the outstanding securities representing more than fifty (50%) of the voting power for election of directors or managers of the **Named Insured**, or acquires the voting rights of such an amount of securities, then this Policy shall continue in full force and effect but only as to **Wrongful Acts** occurring prior to the effective date of such event.

The **Named Insured** shall give the **Insurer** written notice of any such event as soon as practicable but no later than thirty (30) days after the date of such event.

E.      Mergers and Acquisitions

1.      If during the **Policy Period** the **Named Insured** acquires another entity by merger or by consolidation with a **Subsidiary**, acquires all or substantially all of the assets of another entity, or creates or acquires a **Subsidiary** and if the assets

PLIA 050 0211                                                    Page 12 of 14

acquired through such transaction are fifteen percent (15%) or less of the total consolidated assets or total revenues of the **Named Insured** as of the inception of this Policy then, subject to all the other provisions of this Policy, coverage shall automatically apply to any **Claim** involving the merged or consolidated entity, **Subsidiary**, or assets.

2.   If during the **Policy Period** the **Named Insured** acquires another entity by merger or by consolidation with a **Subsidiary**, acquires all or substantially all of the assets of another entity, or creates or acquires a **Subsidiary** and if the assets acquired through such transaction are more than fifteen percent (15%) of the total consolidated assets or total revenues of the **Named Insured** as of the inception of this Policy then, subject to all the other provisions of this Policy, coverage shall automatically apply to the merged or consolidated entity or **Subsidiary** for a period of 30 days after such creation or acquisition.   For coverage to apply to such merged or consolidated entity or **Subsidiary** after such 30 day period, the **Named Insured** must provide the **Insurer** with full particulars of the transaction, agree to any additional premium and/or amendment of the provisions of this Policy the **Insurer** requires and pay any premium required.

3.   There shall be no coverage for any **Wrongful Act** involving the merged or consolidated entity, **Subsidiary**, or assets that occurred prior to the consummation of a transaction described in 1. or 2. above, or for any other **Wrongful Act** whenever occurring which together with a **Wrongful Act** that occurred prior to the consummation of such transaction would constitute **Interrelated Wrongful Acts**.

4.   There shall be no coverage for any **Wrongful Act** of any **Subsidiary** or any of its directors, officers or employees occurring on or after the date such entity ceases to be a **Subsidiary**.

F.   Other Insurance

1.   If any **Insureds** have other insurance for a **Claim** made and reported during the **Policy Period**, then this Policy shall be excess over any other valid and collectible insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise.

2.   The foregoing shall not apply if such other insurance is specifically intended to be excess over the coverage afforded by this Policy.

3.   If a **Claim** is insured by another policy provided by the **Insurer** or any of its parents, subsidiaries or affiliated companies, then the Limit of Liability for all **Loss** and **Defense Costs** under this Policy, as respects any such **Claim**, shall be reduced by any amounts paid or payable under such other insurance policy.

G.   Subrogation

1.   In the event of payment under this Policy, the **Insurer** shall be subrogated to the extent of such payment to all of the rights of recovery of the **Insureds** against any person or organization. The **Insureds** shall execute and deliver all papers and instruments required and shall and do whatever else is necessary to enable the **Insurer** effectively to bring suit in their name and otherwise secure such rights. The **Insureds** shall do nothing to prejudice any such rights.

2.   Any amount recovered after payment under this Policy shall be apportioned in the inverse order of payment to the extent of the actual payment. The expenses incurred in obtaining any such recoveries shall be apportioned in the ratio of the respective recoveries.

H.   Assignment

This Policy and any and all rights hereunder are not assignable without the written consent of the **Insurer**.

I.    Entire Agreement

The terms and provisions of this Policy shall not be waived, changed or modified, unless by endorsement. Notices to, by or from any agent, representative or servant of any **Insureds** or the **Insurer** shall not affect a waiver, change or modification of the Policy and shall not prevent the Insurer from asserting any rights under the Policy.

J.    Conformity to Statute

Any terms of this Policy which are in conflict with the terms of any applicable laws construing this Policy are hereby amended to conform to such laws.

K.    Authorization

By acceptance of this Policy, the **Named Insured** agrees to act on behalf of all of the **Insureds** for all purposes including but not limited to the negotiation of the terms of the Policy, payment of or return of premiums, receipt and acceptance of any endorsement issued to form a part of the Policy and giving and receiving notice of cancellation, termination or non-renewal of the Policy.

L.    Territory

This Policy affords coverage for a **Wrongful Act** committed anywhere in the world provided that the **Claim** is made against the **Insureds** in the United States, its territories or possessions or Canada.

XII.   Service of Suit

In the event of failure of the **Insurer** to pay the amount claimed to be due hereunder, the **Insurer**, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the **Insurer's** rights to commence an action in any court of competent jurisdiction in the United States or to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such action may be made upon General Counsel; Law Department: and that in any such action instituted against the **Insurer** relating to this Policy, the **Insurer** will abide by the final nonappealable decision of such court or of any appellate court in the event of any appeal.

XII.   Headings

The descriptions in the headings and any subheading of this Policy (including any titles given to any Endorsement attached hereto) are inserted solely for convenience and do not constitute any part of the terms or conditions hereof.

This Policy shall not be valid unless completed by the attachment hereto of a Declaration Page and signed by a duly authorized representative of the **Insurer**.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

## SERVICE OF SUIT

The following service of suit provision is added and replaces any other Service of Suit provision contained elsewhere in this policy:

The Superintendent, Commissioner or Director of Insurance of the State is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy. The Company further designates:

**Steve Adams**
**Legal Counsel**
**3340 Peachtree Road N.E.**
**Suite 2950**
**Atlanta, GA 30326**

as its agent to whom such process shall be forwarded by the Director of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

All other terms, conditions and exclusions remain unchanged.

ABAP 900 1008                                                                                                                    Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

## IN WITNESS ENDORSEMENT

### CATLIN SPECIALTY INSURANCE COMPANY

ADMINISTRATIVE OFFICE:          3340 Peachtree Road N.E.
                                Tower Place 100
                                Suite 2950
                                Atlanta, GA 30326

STATUTORY HOME OFFICE:          160 Greentree Drive
                                Suite 101
                                Dover, Delaware 19904

It is hereby agreed and understood that the following In Witness Clause supersedes any and all other
In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and if
required by state law, this policy shall not be valid unless countersigned by a duly authorized
representative of the Company.

Andrew McMellin                          Steven C. Adams
President                                Secretary

ABAP 401 1012                                                        Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

## MINIMUM EARNED PREMIUM ENDORSEMENT

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the Policy is amended as follows:

Section XI., General Conditions, Paragraph A. Termination/Cancellation item 4. is deleted in its entirety and replaced with the following:

4.    The **Named Insured** may cancel the Policy by providing written notice to the **Insurer** at the address stated on the Declarations with the effective date of termination being not less than thirty (30) days thereafter. Proof of mailing the notice of termination shall be sufficient proof of such notice. If the **Named Insured** terminates the Policy, the **Insurer** shall retain the greater amount of either the customary short rate proportion of the premium or a minimum earned premium of twenty-five percent (25%) of the annual policy premium stated in Item 7 of the declarations.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The Information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective:          Policy No.:                    Endorsement No.

Insured:                        Premium:

Insurance Company:

Authorized Signature:

PLIA 410 1111                                                           Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## RELATED PARTY EXCLUSION ENDORSEMENT

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the Policy is amended as follows:

Section **V. Exclusions** of the Policy is amended by adding the following exclusion:

This Policy does not apply to and the **Insurer** shall not pay **Loss** for any **Claim** arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving any actual or alleged **Wrongful Act** committed by or on behalf of the specified individual(s) or entity(ies) shown below:

1. Global Underwriters

2.

3.

4.

5.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective:          Policy No.:                    Endorsement No.

Insured:                                   Premium:

Insurance Company:

                             Authorized Signature:

PLIA 612 0414                                                                          Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

# TELECOMMUNICATIONS EXCLUSION
# ENDORSEMENT

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the Policy is amended as follows:

Section V. Exclusions is amended by adding the following Exclusion:

This Policy shall not apply to and the Insurer shall not pay Loss for any Claim arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving actual or alleged violations of any local, state, foreign or federal telecommunications laws or regulations, including but not limited to:

1.  the United States of America CAN-SPAM Act of 2003, or any amendments thereto or any rules promulgated thereunder;

2.  the United States of America Telephone Consumer Protection Act (TCPA) of 1991; or any amendments thereto or any rules promulgated thereunder; or

3.  any other law, ordinance, regulation or statute relating to any communication, distribution, publication, sending or transmission via telephone, telephone facsimile machine, computer or other telephonic or electronic devices, whether alleged in an action or proceeding brought by or on behalf of any private person or any federal, state or local government agency, including but not limited to, the Federal Trade Commission, the Federal Communications Commission, ASCAP, SESAC, BMI or other licensing or rights organization in such entity's regulatory, quasi-regulatory, or official capacity, function or duty.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective:                     Policy No.:                          Endorsement No.

Insured:                                             Premium:

Insurance Company:

Authorized Signature:

PLIA 614 0215                                                                                          Page 1 of 1



Hull & Company, Inc.
220 Gibraltar Road, Suite 100
Horsham, PA  19044
(215)443-3500  Fax: (215)443-3502
Managing General Agents ☐ Wholesale Insurance Brokers

January 11, 2016

John Bergstrom
Global Indemnity Insurance Agency Inc.
20 Highland Avenue
Metuchen, NJ 08840

RE:        GLOBAL INDEMNITY INSURANCE AGENCY, INC.
Policy #:   IAL-700083-1115
Folder #:   GLOB347

Dear John:

Enclosed please find the policy for the above captioned insured. The policy was issued effective **11/26/2015** through **Catlin Specialty Insurance Company** and replaces any binders issued.  Please examine this document carefully.  If any of the terms or conditions vary from those that you requested, notify our office immediately in writing.

All changes will be made by endorsement as your office holds no binding authority.

Thank you for your continued support and we look forward to working with you again soon. Please call us if we can be of assistance.

Regards,

Robert Ougheltree
rougheltree@hullco.com

RO: oc

If the retail agent issues a certificate of insurance or evidence of insurance it must be according to the terms of this binder and the insurance policy.  Any request to change, endorse or modify the terms of this binder or the insurance policy must be submitted in writing to the insurance company for its advanced written approval and shall not be effective if communicated by means of a certificate of insurance or evidence of insurance.  Hull & Company, Inc., ("Broker") disclaims and undertakes no responsibility for incorrectly issued or inaccurate certificates or evidence of insurance. Broker will provide copies of certificates or evidence of insurance issued by the retail agent to the respective insurance companies <u>only</u> if required by such insurance company. Be advised that the insurance company/ies may or may not review and/or approve a certificate or evidence of insurance.  If Producer provides copies of certificates or evidence of insurance to Broker, Broker will not review, analyze or otherwise comment on the accuracy, completeness or propriety of any certificate or evidence.  Submission of a certificate or evidence of insurance to our office and/or the insurance company's office does not constitute approval of the certificate or evidence.



XL CATLIN

Policy

# NOTICE TO POLICYHOLDERS

### FRAUD NOTICE

| | |
|---|---|
| Arkansas | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| Colorado | **It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable for insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.** |
| District of Columbia | WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| Florida | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| Kansas | A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. |
| Kentucky | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| Louisiana | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| Maine | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits. |
| Maryland | Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| New Jersey | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |
| New Mexico | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |

PN CW 01 0915

© 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

| New York | **General: All applications for commercial insurance, other than automobile insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.<br><br>**All applications for automobile insurance and all claim forms:** Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.<br><br>**Fire:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.<br><br>The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
| --- | --- |
| Ohio | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| Oklahoma | **WARNING:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony. |
| Pennsylvania | **All Commercial Insurance, Except As Provided for Automobile Insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.<br><br>**Automobile Insurance:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |
| Puerto Rico | **Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.** |

PN CW 01 0915

© 2015 X.L. America, Inc. All Rights Reserved.<br>May not be copied without permission.

# NOTICE TO POLICYHOLDERS

| | |
|---|---|
| Rhode Island | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| Tennessee | **All Commercial Insurance, Except As Provided for Workers' Compensation** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>**Workers' Compensation:**  It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers' compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| Utah | **Workers' Compensation:**  Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| Virginia | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| Washington | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| West Virginia | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| All Other States | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison.  (In Oregon, the aforementioned actions may constitute a fraudulent insurance act which may be a crime and may subject the person to penalties). |

© 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

# PRIVACY POLICY

Catlin insurance group [the Companies], believes personal information that we collect about our customers, potential customers, and proposed insureds [referred to collectively in this Privacy Policy as "customers"] must be treated with a high degree of confidentiality.  For this reason and in compliance with the Title V of the Gramm-Leach-Bliley Act ["GLBA"], we have developed a Privacy Policy that applies to all of our U.S. based companies. For purposes of our Privacy Policy, the term "personal information" includes all nonpublic information we obtain about a customer and maintain in a personally identifiable way.  In order to assure the confidentiality of the personal information we collect and in order to comply with applicable laws, all individuals with access to personal information about our customers are required to follow this policy.

### Our Privacy Statement

Your privacy and the confidentiality of your business records are important to us.  Information and the analysis of information is essential to the business of insurance and critical to our ability to provide to you excellent, cost-effective service and products.   We understand that gaining and keeping your trust depends upon the security and integrity of our records concerning you.  Accordingly, our practice is to:

1.  Follow appropriate   standards of security and confidentiality to protect any information you share with us or information that we receive about you;
2.  Verify and exchange information regarding your credit and financial status only for the purposes of underwriting, policy administration, risk management, or claims handling and only with reputable references and clearinghouse services;
3.  Collect and use information about you and your business to advise you about and deliver to you excellent service and products and to administer our business;
4.  Train our employees to handle personal information about you or your business in a secure and confidential manner and maintain reasonable access controls. Not disclose personal information about you or  your business to any organization outside the Catlin insurance group of Companies or to third party service providers unless we disclose to you our intent to do so or we are permitted  to do so by law;
5.  Not disclose medical information about you, your employees, or any claimants under any policy of insurance, unless you provide us with written authorization to do so, or unless the disclosure is for any specific business exception provided in the law;
6.  Attempt, with your help, to keep our records regarding you and your business complete and accurate, and will advise you how and where to access your account information [unless prohibited by law], and will advise you how to correct errors or make changes to that information; and
7.  Audit and assess our operations, personnel and third party service providers to assure that your privacy is respected.

### Collection and Sources of Information

We collect from a customer or potential customer only the personal information that is necessary for [a] determining eligibility for the product or service sought by the customer, [b] administering the product or service obtained, and [c] advising the customer about our products and services.   The information we collect generally comes from the following sources:

Submission –During the submission process, you provide us with information about you and your business, such as your name, address, phone number, e-mail address, and other types of personal identification information;

Quotes –We collect information to enable us to determine your eligibility for the particular insurance product and to determine the cost of such insurance to you.  The information we collect will vary with the type of insurance you seek.  We collect most of our information directly from you through our agents or broker.  Depending on the nature of your insurance transaction we may need additional information from outside sources such as motor vehicle records, loss information reports, court records or other public records.  In some instances, we may send someone to inspect your property and verify information about its value and condition, and a photo of the property may be taken;

# NOTICE TO POLICYHOLDERS

Transactions –We will maintain records of all transactions with us, our affiliates, and our third party service providers, including your insurance coverage selections, premiums, billing and payment information, claims history, and other information related to your account;

Claims –If you obtain insurance from us, we will maintain records related to any claims that may be made under your policies. The investigation of a claim necessarily involves collection of a broad range of information about many issues, some of which does not directly involve you. We will share with you any facts that we collect about your claim unless we are prohibited by law from doing so. The process of claim investigation, evaluation, and settlement also involves, however, the collection of advice, opinions, and comments from many people, including attorneys and experts, to aid the claim specialist in determining how best to handle your claim. In order to protect the legal and transactional confidentiality and privileges associated with such opinions, comments and advice, we will not disclose this information to you; and

Credit and Financial Reports – We may receive information about you and your business regarding your credit. We use this information to verify information you provide during the submission and quote processes and to help underwrite and provide to you the most accurate and cost-effective insurance quote we can provide. If coverage is declined or the charge for coverage is increased because of information contained in a consumer report, we will tell you as required by law. We will also give you the name and address of the consumer reporting agency making the report.

## Retention and Correction of Personal Information

We retain personal information only as long as required by our business practices and applicable law. If we become aware that an item of personal information may be materially inaccurate, we will make reasonable effort to re-verify its accuracy and correct any error as appropriate.

## Storage of Personal Information

We have in place safeguards to protect electronic data and paper files containing personal information.

## Sharing/Disclosing of Personal Information

We maintain procedures to assure that we do not share personal information with an unaffiliated third party for marketing purposes unless such sharing is permitted by law. Personal information may be disclosed to an unaffiliated third party for necessary servicing of the product or service or for other normal business transactions as permitted by law.

We do not disclose personal information to an unaffiliated third party for servicing purposes or joint marketing purposes unless a contract containing a confidentiality/non-disclosure provision has been signed by us and the third party. Unless a consumer consents, we do not disclose "consumer credit report" type information obtained from an application or a credit report regarding a customer who applies for a financial product to any unaffiliated third party for the purpose of serving as a factor in establishing a consumer's eligibility for credit, insurance or employment. Consumer credit report type information" means such things as net worth, credit worthiness, lifestyle information [piloting, skydiving, etc.] solvency, etc. We also do not disclose to any unaffiliated third party a policy or account number for use in marketing. We may share with our affiliated companies information that relates to our experience and transactions with the customer.

## Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer unless an authorization is obtained from the customer whose nonpublic personal information is sought to be disclosed. However, an authorization shall not be prohibited, restricted or required for the disclosure of certain insurance functions, including, but not limited to, claims administration, claims adjustment and management, detection, investigation or reporting of actual or potential fraud, misrepresentation or criminal activity, underwriting, policy placement or issuance, loss control and/or auditing.

# NOTICE TO POLICYHOLDERS

## Access to Your Information

Our employees, employees of our affiliated companies, and third party service providers will have access to information we collect about you and your business as is necessary to effect transactions with you. We may also disclose information about you to the following categories of person or entities:

Your independent insurance agent or broker;

An independent claim adjuster or investigator, or an attorney or expert involved in the claim;

Persons or organizations that conduct scientific studies, including actuaries and accountants;

An insurance support organization;

Another insurer if to prevent fraud or to properly underwrite a risk;

A state insurance department or other governmental agency, if required by federal, state or local laws; or

Any persons entitled to receive information as ordered by a summons, court order, search warrant, or subpoena.

Lienholder, mortgagee, assignee, lessor, or other person shown on our records or our agent's as having a legal or beneficial interest in a policy of insurance.

Parties acting in a fiduciary or representative capacity to you or parties administering transactions as requested or authorized by you.

## Violation of the Privacy Policy

Any person violating the Privacy Policy will be subject to discipline, up to and including termination.

For more information or to address questions regarding this privacy statement, please contact your broker.

## NOTICE TO POLICYHOLDERS

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning the possible impact on your insurance coverage provided under your policy due to directives issued by OFAC. Please read this Policyholder Notice carefully.

OFAC administers and enforces economic and trade sanctions based on US foreign policy and national security goals based on Presidential declarations of "national emergency." OFAC has identified and listed numerous:

- Foreign agents
- Front organizations
- Terrorists
- Terrorist organizations
- Narcotics traffickers

as "Specially Designated Nationals and Blocked Persons." This list can be found on the United States Treasury's web site – http://www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated US sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance will be immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments may also apply.

NOTICE TO POLICYHOLDERS

# CLAIMS NOTICE

All claims must be reported to Catlin at:

**Catlin**
**Attn: Claims**
**P.O. Box 8049**
**Scottsdale, AZ 85252**

**E-mail: CatlinClaims.PL@Catlin.com**

**Phone: 404-443-4910\888-443-4910**
**Fax:     404-443-4912**

PNCL N01 1114

EXHIBIT

D



Catlin Specialty Insurance Co

Alexander Ko, Esq
Senior Claims Specialist
32 Old Slip
36th Floor
New York, NY 10005
USA

Tel   +1 212 857 4042
alexander.ko@catlin.com
www.xlcatlin.com

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Ms. Demetra Bristow
Global Indemnity Insurance Agency, Inc.
20 Highland Avenue
Metuchen, NJ 08840
dbristow@globalindmins.com

14 March 2015

| | | |
|---|---|---|
| Re: | Named Insured: | Global Indemnity Insurance Agency, Inc. |
| | Insurer: | Catlin Specialty Insurance Company |
| | Matter: | Village of South Orange |
| | Policy No.: | IAL-700083-1115 (11/26/2015– 11/26/2016) |
| | Our File No.: | NYS-PL-160325 |

Dear Ms. Bristow:

On behalf of Catlin Specialty Insurance Company ("Catlin") this will further acknowledge receipt of your correspondence regarding the above-referenced matter.

Please be advised that Catlin has not made any determination as to the validity of the allegations nor do we assert that any liability exists. Although we lend no credence to the allegations, the purpose of this letter serves simply to inform you that based on Catlin's investigation and review of the materials/information provided to date, it has determined that coverage and/or indemnification for this Claim is not available under Catlin's Policy. Catlin's coverage determination is discussed in greater detail below.

### I.    Factual Background

Catlin is in receipt of an attorney demand letter dated February 29, 2016 issued on behalf of Aegis Security Insurance Company ("Aegis") and addressed to Coughlin Duffy LLP, as counsel for Global Indemnity Insurance Agency ("Global"). In its letter, Aegis makes reference to a Fourth-Party Complaint filed on March 18, 2013 against Global related to the litigation styled *First Surety Financial, LLC v. Borough of Washington v. Aegis Security Insurance Company*. Aegis further states having entered in a tolling agreement with Global with regard to the Fourth-Party Complaint running until March 15, 2016. Now, Aegis is making a $90,860.86 demand against Global which constitutes the decision entered against Aegis in the aforementioned litigation.

Additionally, Aegis goes on to reference two separate and additional losses it has suffered related to bonds issued by Global resulting in substantial losses to Aegis: (1) Consolidated Building Corp. on the Borough of Washington ("BOW") Municipal Building and Salt Shed Project and (2) Parikh Inc. on the Village of South Orange Township Firehouse Project ("SOT"). The total loss on these projects is $1,732,223.70 which breaks down to $1,189,700.49 attributable loss to BOW and $542,523.21 attributable loss to SOT. Specifically related to BOW, Aegis alleges entering into a Surety Agent Agreement on January 1, 2007

giving Global full power to receive and accept proposals for surety bonds. Aegis contends Global engaged in fraudulent and tortious conduct by breaching its common law duty to act as a reasonable agent in binding Aegis to the BOW project bond. Specifically related to SOT, Aegis alleges receiving and accepting a bond proposal from Global for the SOT project subject to specific conditions. Aegis alleges there specific conditions were not met and Global also made financial misrepresentations which were material to Aegis' financial decision-making. Aegis is making a demand of $1,732,223.70 to resolve the BOW and SOT matters.

## II.      Catlin Policy

Subject to all its terms and conditions, Catlin has carefully reviewed the Insurance Agency Professional Liability Insurance Policy No. IAL-700083-1115 issued to Global Indemnity Insurance Agency Inc. for the November 26, 2015 to November 26, 2016 Policy Period ("Policy"). The Policy provides a $2,000,000 Limit of Liability for each Claim and in the Aggregate, as well as $25,000 for Regulatory Proceedings, and $250 per day for each Claim and $5,000 in the Aggregate for Litigation Expense, as well as $25,000 for Subpoena Expenses. Please note coverage is subject to a $50,000 Retention for each Claim.

## III.      Coverage Analysis

As stated above, Catlin regrets to inform you that coverage is not available to an Insured under the aforementioned Policy, based on the following terms and conditions:

Please direct your attention to Policy Section I., *Insuring Agreement*, which indicates as follows:

> The Insurer shall pay, on behalf of the Insured, Loss which the Insured becomes legally obligated to pay because of a Claim that is both made against the Insured and reported to the Insurer in writing during the Policy Period or Discovery Period, if applicable, for a Wrongful Act committed solely in the rendering or failing to render Professional Services for a Client, provided:
>
> 1. Such Wrongful Act occurred on or after the Retroactive Date; and
>
> 2. As of the inception date of this Policy, or the first policy issued to the Named Insured by the Insurer or any of the Insurer's parents, subsidiaries or affiliates of which this Policy is the last in a series of continuously renewed policies, no Insured had knowledge or reasonable basis upon which to anticipate that the Wrongful Act or any Interrelated Wrongful Act could result in a Claim.

Also, please be advised that the following definitions are set forth in Policy Section IV and may be applicable to this coverage analysis:

> C.   Claims means a written demand received by any Insured for monetary damages (including pleadings received in a civil litigation, arbitration, mediation or alternative dispute resolution) for an actual or alleged Wrongful Act. A Claim does not include the following:
>
> 1. a demand for declaratory, injunctive or other non-monetary relief;
>
> 2. any form of criminal proceedings;
>
> 3. any demand by a governmental or quasi-governmental official or agency or any self- regulatory official or agency except if the agency or official is a Client of the Insured in connection with the rendering of Professional Services.
>
> D.   Client means an individual, company or entity for whom or which an Insured renders Professional Services to gain monetary compensation.

Please also refer to the definition of "Professional Services" set forth in Policy Section IV. Q. which provides:

Professional Services are solely limited to the following activities undertaken pursuant to a valid license in both the state where an Insured is located and the state where a Client is located or transaction is undertaken:

1. soliciting, placing, selling or servicing of any of the following:

    a. property and casualty insurance;

    b. life insurance, accident and health insurance, long-term care insurance, disability income insurance or fixed annuities;

    c. variable annuities, flexible and scheduled premium annuities and variable life insurance;

    d. employee benefit plans, including but not limited to Group Plans, Group Ordinary Pension or Profit Sharing Plans, 401(k) or 501(b) Plans, Retirement Annuities, Life, Accident and Health or Disability Plans;

2. insurance consulting and expert witness services for a Client in connection insurance related matters;

3. appraising real or personal property for a client in connection with products set forth above;

4. arrangement of premium financing for a Client with the placement of insurance coverage;

5. safety consulting, loss control services, teaching insurance/risk management courses/seminars and risk management services for a Client in connection with the products set forth above;

6. claims adjusting and administration for a Client in connection with the products set forth above; and

7. services as a notary public.

Professional Services shall not include the sale, attempted sale, servicing or any activities in connection with (i) mutual funds; (ii) securities, including but not limited to, stocks, bonds, limited partnerships, promissory notes, viatical settlements, leasing arrangements, real estate trusts, and investment participation or pooling arrangements.

Professional Services shall not include the Insured acting as a:

1. Third-party claims administrator;

2. Financial planner or advisor;

3. Registered Investment Advisor; or

4. Registered Representative.

Please be advised Policy Section IV. U. defines "Wrongful Act" to mean "a negligent act, error or omission or Personal Injury committed by an Insured or any natural person for whose Wrongful Acts the Insured is legally responsible solely in the rendering of or failing to render Professional Services."

In light of the foregoing Policy language and the information received to date, please be advised there is no coverage for this matter as the Insuring Agreement has not been triggered. At this juncture there has not been a Wrongful Act alleged for the rendering or failure to render a Professional Service for a Client. Aegis has made allegations against Global related to the bond transactions in the BOW and SOT matters. As such, please note "Professional Services" are expressly not to include "...any activities in connection with...bonds..."

Further, please note this Policy only provides coverage for Claims first made to the Insured and reported to the Insurer during the Policy Period. The matter relating the *First Surety Financial, LLC v. Borough of Washington v. Aegis Security Insurance Company* litigation first arose with the filing of the Fourth-Party Complaint on March 18, 2013 which pre-dates the inception of this Policy. As such, any Claim associated with this Fourth-Party Complaint also does not trigger the Insuring Agreement as it was not made upon the Insured during the applicable Policy Period. Given the foregoing rationale and coverage discussion, Catlin must respectfully decline coverage for this matter in its entirety.

### IV.    Conclusion

If, after review of the foregoing, you believe that there is additional information that should be considered by Catlin please provide such information to the undersigned for review. Please do not hesitate to contact the undersigned if you have any questions or comments regarding Catlin's coverage position or if you would like to discuss this matter in greater detail.

Please note that the above-mentioned definitions, exclusions, and/or Policy provisions are not intended to be an exhaustive list that apply or may apply to this matter. Catlin reserves any and all rights it may have or may subsequently acquire under the Policy, at law and in equity, including the right to assert any further coverage and Policy defenses as basis for the position that coverage is not afforded for this matter irrespective of whether or not they have been specifically referred to in this letter.

Sincerely,

Alexander Ko, Esq.
Senior Claims Specialist

cc:

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Hull & Company
1050 Wall Street West, Suite 330
Lyndhurst, NJ 07071

EXHIBIT

E



Catlin Specialty Insurance Co

Alexander Ko, Esq
Senior Claims Specialist
32 Old Slip
36th Floor
New York, NY 10005
USA

Tel  +1 212 857 4042
alexander.ko@catlin.com
www.xlcatlin.com

**VIA REGULAR MAIL**

Ms. Demetra Bristow
Global Indemnity Insurance Agency, Inc.
20 Highland Avenue
Metuchen, NJ 08840
dbristow@globalindmins.com

23 May 2016

Re:   Named Insured:     Global Indemnity Insurance Agency, Inc.
      Insurer:           Catlin Specialty Insurance Company
      Matter:            Village of South Orange
      Policy No.:        IAL-700083-1115 (11/26/2015– 11/26/2016)
      Our File No.:      NYS-PL-160325

Dear Ms. Bristow:

On behalf of Catlin Specialty Insurance Company ("Catlin") this will further acknowledge receipt of your correspondence regarding the above-referenced matter.

Please be advised that Catlin has not made any determination as to the validity of the allegations nor do we assert that any liability exists. Although we lend no credence to the allegations, the purpose of this letter is to advise you that Catlin will provide coverage for this matter subject to the reservation of rights set forth below. This letter supersedes any previously issued coverage position.

## I.     Factual Background

Catlin is in receipt of an attorney demand letter dated February 29, 2016 issued on behalf of Aegis Security Insurance Company ("Aegis") and addressed to Coughlin Duffy LLP, as counsel for Global Indemnity Insurance Agency ("Global"). In its letter, Aegis makes reference to a Fourth-Party Complaint filed on March 18, 2013 against Global related to the litigation styled *First Surety Financial, LLC v. Borough of Washington v. Aegis Security Insurance Company*. Aegis further states having entered in a tolling agreement with Global with regard to the Fourth-Party Complaint running until March 15, 2016. Now, Aegis is making a $90,860.86 demand against Global which constitutes the decision entered against Aegis in the aforementioned litigation.

Additionally, Aegis goes on to reference two separate and additional losses it has suffered related to bonds issued by Global resulting in substantial losses to Aegis: (1) Consolidated Building Corp. on the Borough of Washington ("BOW") Municipal Building and Salt Shed Project and (2) Parikh Inc. on the Village of South Orange Township Firehouse Project ("SOT"). The total loss on these projects is $1,732,223.70 which breaks down to $1,189,700.49 attributable loss to BOW and $542,523.21 attributable loss to SOT. Specifically related to BOW, Aegis alleges entering into a Surety Agent Agreement on January 1, 2007

giving Global full power to receive and accept proposals for surety bonds. Aegis contends Global engaged in fraudulent and tortious conduct by breaching its common law duty to act as a reasonable agent in binding Aegis to the BOW project bond. Specifically related to SOT, Aegis alleges receiving and accepting a bond proposal from Global for the SOT project subject to specific conditions. Aegis alleges there specific conditions were not met and Global also made financial misrepresentations which were material to Aegis' financial decision-making. Aegis is making a demand of $1,732,223.70 to resolve the BOW and SOT matters.

## II.      Catlin Policy

Subject to all its terms and conditions, Catlin has carefully reviewed the Insurance Agency Professional Liability Insurance Policy No. IAL-700083-1115 issued to Global Indemnity Insurance Agency Inc. for the November 26, 2015 to November 26, 2016 Policy Period ("Policy"). The Policy provides a $2,000,000 Limit of Liability for each Claim and in the Aggregate, as well as $25,000 for Regulatory Proceedings, and $250 per day for each Claim and $5,000 in the Aggregate for Litigation Expense, as well as $25,000 for Subpoena Expenses. Please note coverage is subject to a $50,000 Retention for each Claim.

## III.     Coverage Analysis

Please be advised that Catlin has not made any determination as to the validity of the allegations nor do we assert that any liability exists. Although we lend no credence to the allegations, the purpose of this letter is to advise you that there is coverage for this matter pursuant to the Policy.

Please direct your attention to Policy Section I., *Insuring Agreement,* which indicates as follows:

> The Insurer shall pay, on behalf of the Insured, Loss which the Insured becomes legally obligated to pay because of a Claim that is both made against the Insured and reported to the Insurer in writing during the Policy Period or Discovery Period, if applicable, for a Wrongful Act committed solely in the rendering or failing to render Professional Services for a Client, provided:
>
> 1. Such Wrongful Act occurred on or after the Retroactive Date; and
>
> 2. As of the inception date of this Policy, or the first policy issued to the Named Insured by the Insurer or any of the Insurer's parents, subsidiaries or affiliates of which this Policy is the last in a series of continuously renewed policies, no Insured had knowledge or reasonable basis upon which to anticipate that the Wrongful Act or any Interrelated Wrongful Act could result in a Claim.

Also, please be advised that the following definitions are set forth in Policy Section IV and may be applicable to this coverage analysis:

C. Claims means a written demand received by any Insured for monetary damages (including pleadings received in a civil litigation, arbitration, mediation or alternative dispute resolution) for an actual or alleged Wrongful Act. A Claim does not include the following:

1. a demand for declaratory, injunctive or other non-monetary relief;

2. any form of criminal proceedings;

3. any demand by a governmental or quasi-governmental official or agency or any self- regulatory official or agency except if the agency or official is a Client of the Insured in connection with the rendering of Professional Services.

D. Client means an individual, company or entity for whom or which an Insured renders Professional Services to gain monetary compensation.

G. Insured means:

    1.  the Company and any Predecessor Firm;

J.  Loss means Defense Costs and compensatory monetary damages, judgments, settlements or awards that an Insured is legally obligated to pay on account of a covered Claim.

Loss includes taxes, fines or penalties incurred by a third party and included in such third party's Claim against the Insured.

Loss also includes punitive or exemplary damages to the fullest extent permitted by the law of any state or jurisdiction where: (1) the punitive or exemplary are awarded or imposed; (2) any Wrongful Act underlying the Claim was committed; (3) either the Insurer or the Insured is incorporated, has its principal place of business or resided; or (4) this Policy was issued or became effective.

Loss does not include:

    1.  civil or criminal fines or penalties imposed by law or regulations;

    2.  the multiplied portion of a multiplied damage award;

    3.  the return, withdrawal, or restitution or fees, commissions, expenses or charges;

    4.  costs incurred as a result of any non-pecuniary or injunctive relief;

    5.  taxes assessed against the Insured; or

    6.  matters which are deemed uninsurable by law.

Please also refer to the definition of "Professional Services" set forth in Policy Section IV. Q. which, in pertinent part, includes:

    1.  soliciting, placing, selling or servicing of any of the following:

        a.  property and casualty insurance;

Finally, please be advised Policy Section IV. U. defines "Wrongful Act" to mean "a negligent act, error or omission or Personal Injury committed by an Insured or any natural person for whose Wrongful Acts the Insured is legally responsible solely in the rendering of or failing to render Professional Services."

Given the preceding Policy provisions and given this matter concerns allegations of financial misrepresentations related to a construction bond proposal on the SOT project; it appears this matter qualifies as a Claim alleging Wrongful Acts as defined by the Policy. Additionally, it has been provided this matter was initially noticed to Insured on March 2, 2016 and first reported to Catlin on March 2, 2015. It appears this matter was properly and timely first made and first reported within the applicable Policy Period.

Further, please note this Policy only provides coverage for Claims first made to the Insured and reported to the Insurer during the Policy Period. The matter relating the *First Surety Financial, LLC v. Borough of Washington v. Aegis Security Insurance Company* litigation first arose with the filing of the Fourth-Party Complaint on March 18, 2013 which pre-dates the inception of this Policy. As such, any Claim associated with this Fourth-Party Complaint does not trigger the Insuring Agreement as it was not made upon the Insured during the applicable Policy Period.

Pursuant to Policy Section II., *Defense and Settlement,* "The Insurer shall have the right and duty to defend any civil litigation or arbitration that constitutes a Claim against an Insured that is covered by this Policy." Thus, Catlin has retained its panel law firm Kaufman, Dolowich, & Voluck, LLP to defend you in this matter. Counsel's contact information is as follows:

Ivan Dolowich, Esq.
Kaufman, Dolowich, & Voluck, LLP
135 Crossways Park Drive
Woodbury, NY 11797
Tel: (516) 681-1100

Pursuant to Policy Section VI. B. *Retention*, "the Retention Amount stated in Item 4. of the Declarations is applicable to each Claim and applies to the payment of Loss, including Defense Costs. The Retention Amount shall be paid by the Named Insured and shall be uninsured and remain uninsured during the Policy Period." The Insurer's obligations under this Policy shall not commence until the applicable Retention Amount has been satisfied. The Insurer shall pay all Damages and Defense Expenses incurred in each Claim that exceeds the Retention.

### IV.      Conclusion

If, after review of the foregoing, you believe that there is additional information that should be considered by Catlin please provide such information to the undersigned for review. Please do not hesitate to contact the undersigned if you have any questions or comments regarding Catlin's coverage position or if you would like to discuss this matter in greater detail.

Please note that the above-mentioned definitions, exclusions, and/or Policy provisions are not intended to be an exhaustive list that apply or may apply to this matter. Catlin reserves any and all rights it may have or may subsequently acquire under the Policy, at law and in equity, including the right to assert any further coverage and Policy defenses as basis for the position that coverage is not afforded for this matter irrespective of whether or not they have been specifically referred to in this letter.

Sincerely,

Alexander Ko, Esq.
Senior Claims Specialist

cc:

**VIA REGULAR MAIL**

Hull & Company
1050 Wall Street West, Suite 330
Lyndhurst, NJ 07071

E

X

H

I

B

I

T

F

**From:** Ko, Alexander [mailto:Alexander.Ko@xlcatlin.com]
**Sent:** Thursday, July 14, 2016 2:42 PM
**To:** dbristow@globalindemins.com
**Subject:** NYS-PL-160325 / Global Indemnity Insurance Agency

Dear Ms. Bristow:

Please find attached XL Catlin's supplemental coverage position disclaiming coverage for the above referenced matter; a physical copy will follow via certified mail return receipt requested.

Please review and contact me to discuss at your convenience.

Regards,
Alex

Alexander Ko, Esq.
Senior Claims Specialist - Select Professional
XL Catlin

Financial Square
32 Old Slip, 36th Floor, New York, NY 10005, USA
Direct: +1 212 857 4042
alexander.ko@xlcatlin.com
xlcatlin.com

CONFIDENTIALITY: This communication, including attachments, is for the exclusive use of the addressee(s) and may contain proprietary, confidential or privileged information. If you are not the intended recipient, any use, copying, disclosure, or distribution or the taking of any action in reliance upon this information is strictly prohibited. If you are not the intended recipient, please notify the sender immediately and delete this communication and destroy all copies.

PRIVACY POLICY: XL Group companies are committed to compliance with data protection laws. Please contact compliance@xlcatlin.com for further information on our privacy policy.

1



Catlin Specialty Insurance Co

Alexander Ko, Esq
Senior Claims Specialist
32 Old Slip
36th Floor
New York, NY 10005
USA

Tel  +1 212 857 4042
alexander.ko@catlin.com
www.xlcatlin.com

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Ms. Demetra Bristow
Global Indemnity Insurance Agency, Inc.
20 Highland Avenue
Metuchen, NJ 08840
dbristow@globalindmins.com

|       |                  |                                          |
|-------|------------------|------------------------------------------|
| Re:   | Named Insured:   | Global Indemnity Insurance Agency, Inc.  |
|       | Insurer:         | Catlin Specialty Insurance Company       |
|       | Matter:          | Village of South Orange Firehouse Project|
|       | Policy No.:      | IAL-700083-1115 (11/26/2015– 11/26/2016) |
|       | Our File No.:    | NYS-PL-160325                            |

Dear Ms. Bristow:

The purpose of this letter serves to inform you that based on Catlin Specialty Insurance Company's ("Catlin") investigation and review of the materials/information provided to date, it has determined that coverage and/or indemnification for this Claim is not available under Catlin's Policy. This letter shall supersede any prior correspondence issued by Catlin in regard to the above-captioned matter.

**Factual Background**

The matter concerns the demand for settlement set forth in a letter, dated February 29, 2016, to Coughlin Duffy, LLP, as counsel for Global Indemnity Insurance Agency, Inc. ("Global"), from Romano Garubo & Argentieri, counsel to Aegis Security Insurance Company ("Aegis") with regard to an ongoing litigation between Aegis and Global. Specifically, the letter references a Fourth-Party Complaint filed against Global on March 18, 2013 in the litigation styled *First Surety Financial, LLC v. Borough of Washington v. Aegis Security Insurance Company*, and to a Tolling Agreement, dated November 22, 2013, entered into between Aegis and Global. According to the letter, pursuant to the Tolling Agreement, Aegis agreed to and did voluntarily dismiss its Fourth Party Complaint against Global, without prejudice.

In the letter, Aegis contends, after have reviewed various bonds issued by Global pursuant to their agency agreement, that several bonds issued by Global have resulted in substantial losses to Aegis. However, for settlement purposes, the letter references only the two following projects: (1) Consolidated Building Corp. on the Borough of Washington Municipal Building and Salt Shed Project (the "BOW Project"), and (2) Parikh Inc. on the Village of South Orange Township Firehouse Project (the "SOT Project"). Aegis alleges that it incurred a loss of $1,189,700.49 resulting from the BOW Project, and a loss of $542,523.21 resulting from the SOT Project, and demands a total of $1,732,223.70 from Global, as well as $77,632.82 for unpaid premium by Global.

With regard to the BOW project, Aegis alleges that Global failed to disclose the financial condition of the principal, and failed to require the issuance of a subcontractor bond, among other things.  Aegis contends Global engaged in fraudulent and tortious conduct by breaching its common law duty to act as a reasonable agent in binding Aegis to the BOW project bond.

With regard to the SOT project, Aegis alleges that Global filed to satisfy specific conditions for the project, that Global made financial misrepresentations which were material to Aegis' financial decision-making, and that Global failed to obtain bonding for subcontractors.

Pursuant to the Claim tender received by Catlin on or about March 3, 2016, Catlin was instructed to focus on Aegis' demand only with regard to the SOT project, and to disregard Aegis' demand with regard to the BOW project and the Fourth-Party Complaint.

**The Catlin Policy**

Catlin issued an Insurance Agency Professional Liability Insurance Policy, No. IAL-700083-1115, to Global Indemnity Insurance Agency Inc. for the November 26, 2015 to November 26, 2016 Policy Period (the "Policy").  The Policy provides a $2,000,000 Limit of Liability for each Claim and in the Aggregate, as well as $25,000 for Regulatory Proceedings.  The Policy also provides $250 per day for each Claim and $5,000 in the Aggregate for Litigation Expenses, and $25,000 for Subpoena Expenses.  Coverage is subject to a $50,000 Retention for each Claim.

Please note that Section I., *Insuring Agreement*, provides the following:[1]

> The Insurer shall pay, on behalf of the Insured, Loss which the Insured becomes legally obligated to pay because of a Claim that is both made against the Insured and reported to the Insurer in writing during the Policy Period or Discovery Period, if applicable, for a Wrongful Act committed solely in the rendering or failing to render Professional Services for a Client, provided:
>   1. Such Wrongful Act occurred on or after the Retroactive Date; and
>
>   2. As of the inception date of this Policy, or the first policy issued to the Named Insured by the Insurer or any of the Insurer's parents, subsidiaries or affiliates of which this Policy is the last in a series of continuously renewed policies, no Insured had knowledge or reasonable basis upon which to anticipate that the Wrongful Act or any Interrelated Wrongful Act could result in a Claim.

Also, please be advised of the following definitions, set forth in Section IV of the Policy:

> C. Claim means a written demand received by any Insured for monetary damages (including pleadings received in a civil litigation, arbitration, mediation or alternative dispute resolution) for an actual or alleged Wrongful Act.  A Claim does not include the following:
>   1. a demand for declaratory, injunctive or other non-monetary relief;
>
>   2. any form of criminal proceedings;
>
>   3. any demand by a governmental or quasi-governmental official or agency or any

---

[1] The following policy provisions are provided for your easy reference.  Please read the entire Policy to determine what is and what is not covered.

2

self- regulatory official or agency except if the agency or official is a Client of the Insured in connection with the rendering of Professional Services.

D. Client means an individual, company or entity for whom or which an Insured renders Professional Services to gain monetary compensation.

G. Insured means:
    1. the Company or any Predecessor Firm;

H. Interrelated Wrongful Acts means any Wrongful Acts that are:
    1. similar, repeated or continuous; or

    2. connected by reason of any common fact, circumstance, situation, transaction, causality, event, decision or policy or one or more series of facts, circumstances, situations, transactions, casualties, events, decisions or policies.

Q. Professional Services are solely limited to the following activities undertaken pursuant to a valid license in both the state where an Insured is located and the state where a Client is located or transaction is undertaken:
    1. the soliciting, placing, selling or servicing of any of the following:
        a. property and casualty insurance;

U. Wrongful Act means a negligent act, error or omission or Personal Injury committed by an Insured or any natural person for whose Wrongful Acts the Insured is legally responsible solely in the rendering of or failing to render Professional Services.

In addition, Section IX of the Policy provides the following:

Single Claim and Retention/Interrelated Wrongful Acts

All claims based upon or arising out of the same Wrongful Act or Interrelated Wrongful Acts shall be considered a single Claim and each such single Claim shall be deemed to have been made on the earlier of the following:
A. when the earliest Claim arising out of such Wrongful Act or Interrelated Wrongful Acts was first made; or
B. when notice was provided to the Insurer pursuant to Section VIII.B. herein concerning a Wrongful Act giving rise to such Claim.

Section V., Exclusions, provides, in pertinent part, that this Policy shall not apply to and the Insurer shall not pay Loss for any Claim:

                                      * * *

D. arising out of, based upon or in any way involving any fact, circumstance or situation which has been the subject of any written notice given under any policy of which this Policy is a direct or indirect renewal or replacement or any other policy which preceded this Policy.

E. arising out of, based upon or in any way involving any known prior or pending litigation against any Insured filed on or before the Effective Date of this Policy or under any other policy of which this Policy is a direct or indirect renewal or replacement, whichever is earlier, or which is related in any way to the same or substantially the same facts, circumstances or situations which are the subject of or the basis for such prior and pending litigation.

3

**Coverage Analysis**

Catlin recently obtained and reviewed a copy of the Fourth-Party Complaint and the November 22, 2013 Tolling Agreement. The Fourth-Party Complaint includes, among other things, specific allegations pertaining to the BOW Project including that Global misrepresented the financial condition of the principal, Consolidated Building Corp., and alleges the following causes of action: breach of contract, breach of fiduciary duty, and negligence. The 2013 Tolling Agreement specifically references allegations contained in the Fourth-Party Complaint (the Asserted Claims), as well as the fact that Aegis is continuing to investigate whether it has any other claims against Global (the Non-Asserted Claims). The Tolling Agreement stayed all claims, counterclaims, etc., that may relate to the issues and/or causes of action that pertain to both Asserted Claims and Non-Asserted Claims. By entering into the Tolling Agreement, Aegis agreed to dismiss the Fourth-Party Complaint without prejudice while Aegis and Global pursued a settlement of the Asserted and Non-Asserted Claims stemming from the Surety Agent Agreement.

As the Tolling Agreement was to expire on March 15, 2016, the February 29, 2016 letter contains a settlement demand by Aegis in an effort to resolve the Asserted and the Non Asserted Claims. We note that the allegations concerning the BOW Project pertain to an Asserted Claim as these allegations were included in the Fourth Party Complaint. Also, we note that the allegations pertaining to the SOT Project pertain to a Non-Asserted Claim as these allegations were not included in the Fourth-Party Complaint.

Based on our review of the documents received, please be advised that Aegis' allegations concerning the SOT Project are related to the allegations concerning the BOW Project. Both projects arise out of the Surety Agent Agreement between Aegis and Global, whereby Global became the agent of Aegis. In addition, for both projects, Aegis alleges that Global misrepresented the financial condition of the principals, failed to ensure that subcontractors were properly bonded, and otherwise failed to comply with specific conditions set forth by Aegis. As such, the allegations regarding the BOW and SOT Projects constitute Interrelated Wrongful Acts.

As referenced above, the Policy's Insuring Agreement requires that Claims be both made against the Insured and reported to the Insurer in writing during the Policy Period. Inasmuch as the allegations pertaining to the SOT Project are Interrelated Wrongful Acts to those alleged in the Fourth-Party Complaint, the SOT Project Claim was first made in 2013 when the Fourth-Party Complaint was filed. Because the SOT Project Claim was not first made during the November 26, 2015 to November 26, 2016 Policy Period, it does not trigger coverage under the Policy. Consequently, Catlin respectfully disclaims coverage on this basis.

In addition, please be advised that Exclusion E, referenced above, precludes cover for this matter as the SOT Project is related to the allegations contained in the Fourth-Party Complaint, as well as the 2013 Tolling Agreement. The SOT Project involves the same or substantially the same facts, circumstance or situations which are the subject of the Fourth-Party Complaint which was filed prior to the Effective date of the Policy. Also, claims -- and potential claims -- arising from the BOW and SOT Projects, among others, are included in the 2013 Tolling Agreement. Consequently, on this basis as well, Catlin respectfully disclaims coverage for this matter.

While we believe the above to be dispositive, please note that coverage for this matter also may be precluded by Policy Exclusions D, referenced above. The application for insurance, dated November 11, 2014, submitted by Global to Catlin references a pending litigation filed by Aegis concerning the failure to ensure that subcontractors were properly bonded. As the litigation referenced in the application and the Fourth-Party Complaint appear to be one in the same, and appear to have been reported to Global's prior

4

carrier, Exclusion D would apply.  Please be advised that Catlin reserves the right to deny coverage on this basis.

**Conclusion**

As the SOT Project claim is related to the Fourth-Party Complaint, we strongly advise you to notify your prior carrier of this matter, if you have not already done so.

If you believe that there is additional information that should be considered by Catlin please provide such information to the undersigned for review. Please do not hesitate to contact the undersigned if you have any questions or comments regarding Catlin's coverage position or if you would like to discuss this matter in greater detail.

Please note that the above-mentioned definitions, exclusions, and/or Policy provisions are not intended to be an exhaustive list that apply or may apply to this matter. Catlin reserves any and all rights it may have or may subsequently acquire under the Policy, at law and in equity, including the right to assert any further coverage and Policy defenses as basis for the position that coverage is not afforded for this matter irrespective of whether or not they have been specifically referred to in this letter.

Sincerely,

Alexander Ko, Esq.
Senior Claims Specialist

cc:

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Hull & Company
1050 Wall Street West, Suite 330
Lyndhurst, NJ 07071

EXHIBIT

G

JON M. BRAMNICK◦⋆
JOHN C. RODRIGUEZ
GARY J. GRABAS
JONATHAN P. ARNOLD◦⋆
PATRICK J. MANGAN⋆ᶜ
CARL A. SALISBURY⋆
DANIEL O. SLOAN
KELLY A. LYNCH
ROBERT C. ROWBOTHAM, II
BRIAN L. TREMBLEY⋆
BRENT A. BRAMNICK◦
MICHAEL NORIEGA◦
SUSAN E. KINSELLA
RICHARD M. BROCKWAY
JOSÉ VILARIÑO
ANNE MARIE BRAMNICK

⋆ CERTIFIED BY THE SUPREME COURT
OF NEW JERSEY AS A CIVIL TRIAL
ATTORNEY
‡ CERTIFIED BY THE SUPREME COURT
OF NEW JERSEY AS A WORKERS'
COMPENSATION ATTORNEY
◦ MEMBER OF N.J., N.Y. & FLA. BARS
⋆ MEMBER OF N.J. & N.Y. BARS
ᶜ MEMBER OF N.J. & P.A. BARS

**BRAMNICK, RODRIGUEZ,**
**GRABAS, ARNOLD & MANGAN, LLC**
ATTORNEYS AT LAW
1827 EAST SECOND STREET
SCOTCH PLAINS, NEW JERSEY 07076
908.322.7000
FAX 908.322.6997
www.bramnicklaw.com
Email: jonbramnick@jonbramnick.com

OF COUNSEL
MARK C. VOGEL
MICHAEL TIEDEMANN
OF COUNSEL APPEALS

ESSEX COUNTY OFFICE
48 SO FEDERAL STREET
NEWARK, NEW JERSEY
973.273.0075

MIDDLESEX COUNTY OFFICE
WILLIAMSBURG COMMONS
61 ALDER COURT
EAST BRUNSWICK, NJ 08816
732.418.9599

MORRIS COUNTY OFFICE
973.860.7096

PASSAIC COUNTY OFFICE
1115 BROAD STREET, #211
CLIFTON, NJ 07013
973.778.1312

CHERRY HILL OFFICE
50 BRACE ROAD, SUITE 115
CHERRY HILL, NJ 08014
609.414.8994

July 29, 2016

*VIA FEDERAL EXPRESS*

Alexander Ko, Esq.
Senior Claims Specialist
Catlin Specialty Insurance Company
32 Old Slip, 36th Floor
New York, NY 10005

Re:  Global Indemnity Insurance Agency, Inc.
     Catlin Specialty Insurance Company
     Village of South Orange Matter, Policy No. IAL-700083-1115 (11/26/15 – 11/26/16)
     Your file No.: NYS-PL-160325

Dear Mr. Ko:

    We have been retained to provide insurance coverage advice to Global Indemnity Insurance Agency, Inc. in connection with a claim for coverage under Professional Liability policy no. IAL-700083-1115 for the referenced matter. We have your letters of March 14, 2015 and July 14, 2016 denying coverage. Our review of the claims made against Global and our analysis of the applicable policy leads us to the inescapable conclusion that your denial of coverage for the referenced matter is incorrect and wrongful. We will address the reasons for that conclusion in a separate letter.

    The purpose of this letter is to place Catlin on notice that Global will be participating in a mediation of the Village of South Orange matter before Michael Brooke Fisher, J.S.C. (ret.) on August 16 and 17, 2016 at the offices of Coughlin Duffy, LLP, 350 Mount Kemble Avenue, Morristown, NJ. As a consequence of Catlin's denial of coverage, Global has no present obligation to cooperate or to consult with Catlin before negotiating or entering a settlement of that matter.

1

Nevertheless, we are notifying you of Global's intent to participate in the mediation and we wish to inform you that we reserve the right, on behalf of Global, to seek payment from Catlin of any settlement that may be reached, together with any and all other payments that may be due to Global in connection with its claim for coverage, including but not necessarily limited to the payment of this firm's attorneys' fees and costs under *R.* 4:42-9(a)(6) of the New Jersey Court Rules.

If you have questions about this notice, kindly let me know.

Thank you.

Sincerely,
**Bramnick, Rodriguez, Grabas, Arnold & Mangan**

By: _____
Carl A. Salisbury

2

EXHIBIT H

**ROMANO, GARUBO & ARGENTIERI**
*Counselors at Law, LLC*
By: Michael F.J. Romano, Esquire
Attorney ID No.: 004451988
52 Newton Avenue, P.O. Box 456
Woodbury, NJ 08096
(856) 384-1515

Attorney for Plaintiff, Aegis Security Insurance Company
=======================================================

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION – MIDDLESEX COUNTY
DOCKET NO.: MID-L-5109-16

| | | |
|---|---|---|
| AEGIS SECURITY INSURANCE COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **SUMMONS** |
| | : | |
| GLOBAL INDEMNITY INSURANCE AGENCY, INC. | : | |
| and JOHN DOES I through V, | : | |
| | : | |
| Defendants | : | |

FROM THE STATE OF NEW JERSEY TO THE DEFENDANT(S) NAMED ABOVE:

Global Indemnity Insurance Agency, Inc.
20 highland Avenue, Suite A
Metuchen, NJ 08840

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The Amended Complaint attached to this Summons states the basis for this lawsuit. If you dispute this Amended Complaint, you or your attorney must file a written answer or motion and proof of service with the Deputy Clerk of the Superior Court in the County listed above within thirty-five (35) days form the date your received this Summons, not counting the date you received it. (The address of each Deputy Clerk of the Superior Court is provided). If the Amended Complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A $135.00 filing fee, payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the Deputy Clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to the plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must

file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the Court to hear your defense.

If you do not file and serve an answer or motion within thirty-five (35) days, the Court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot or are unable to obtain an attorney, you may communicate with the Lawyer Referral Service of the county of your residence, or the county in which the action is pending, or, if there is none in either county, the Lawyer Referral Service of an adjacent county. The summons shall also advise you that if you afford an attorney, you may communicate with the Legal Services Office of the county of your residence or the county in which the action is pending or the Legal Services of New Jersey statewide toll free hotline at 1-888-LSNJ-Law (1-888-576-5529). If you are not a resident of the State of New Jersey, this summons shall similarly advise you, that you can contact the Lawyer Referral Service and/or Legal Services Office, in the county in which the action is pending.   Annexed hereto is a current listing, by county, with telephone numbers of the Legal Services Office and the Lawyer Referral Office serving each county. The Legal Services of New Jersey statewide toll free hotline is 1-888-LSNJ-Law (1-888-576-5529). This list shall be updated regularly by the Administrative Office of the Courts and made available to legal forms publishers and to any person requesting such list.

Dated:  January 10, 2017

/s/ Michelle M. Smith, Esquire
MICHELLE M. SMITH, ESQUIRE
Clerk of the Superior Court

Name of Defendant to be Served:       Global Indemnity Insurance Agency, Inc.

Address of Defendant to be Served:    20 highland Avenue, Suite A
                                      Metuchen, NJ 08840

## Directory of Superior Court Deputy Clerk's Offices
## County Lawyer Referral and Legal Services Offices

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401

LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Room 115
Justice Center, 10 Main St.
Hackensack, NJ 07601

LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Rd.
Mt. Holly, NJ 08060

LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
Hall of Justice
1st Fl., Suite 150
101 South 5th Street
Camden, NJ 08103

LAWYER REFERRAL
(856) 482-0618
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
9 N. Main Street
Cape May Court House, NJ 08210

LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
60 West Broad Street
P.O. Box 10
Bridgeton, NJ 08302

LAWYER REFERRAL
(856) 696-5550
LEGAL SERVICES
(856) 691-0494

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
Civil Customer Service
Hall of Records,  Room 201
465 Dr. Martin Luther King Jr. Blvd.
Newark, NJ 07102

LAWYER REFERRAL
(973) 622-6204
LEGAL SERVICES
(973) 624-4500

**GLOUCESTER COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Fl., Court House
1 North Broad Street
Woodbury, NJ 08096

LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

**HUDSON COUNTY:**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House--1st Floor
583 Newark Ave.
Jersey City, NJ 07306

LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822

LAWYER REFERRAL
(908) 236-6109
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY:**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 S. Broad Street, P.O. Box 8068
Trenton, NJ 08650

LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court,
Middlesex Vicinage
2nd Floor - Tower
56 Paterson Street, P.O. Box 2633
New Brunswick, NJ 08903-2633

LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY:**
Deputy Clerk of the Superior Court
Court House
P.O. Box 1269
Freehold, NJ 07728-1269

LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

**MORRIS COUNTY:**
Morris County Courthouse
Civil Division
Washington and Court Streets
P. O. Box 910
Morristown, NJ 07963-0910

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
118 Washington Street,  Room 121
P.O. Box 2191
Toms River, NJ 08754-2191

LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

**PASSAIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton Street
Paterson, NJ 07505

LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 523-2900

**SALEM COUNTY:**
Deputy Clerk of the Superior Court
Attn: Civil Case Management Office
92 Market Street
Salem, NJ 08079

LAWYER REFERRAL
(856) 935-5629
LEGAL SERVICES
(856) 691-0494

**SOMERSET COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
P.O. Box 3000
40 North Bridge Street
Somerville, N.J. 08876

LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

**UNION COUNTY:**
Deputy Clerk of the Superior Court
1st Fl., Court House
2 Broad Street
Elizabeth, NJ 07207-6073

LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
Court House
413 Second Street
Belvidere, NJ 07823-1500

LAWYER REFERRAL
(908) 859-4300
LEGAL SERVICES
(908) 475-2010

MIDDLESEX VICINAGE CIVIL DIVISION
P O BOX 2633
56 PATERSON STREET
NEW BRUNSWICK    NJ 08903-2633                    TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (732) 519-3728
COURT HOURS  8:30 AM - 4:30 PM

                    DATE:   SEPTEMBER 01, 2016
                    RE:     AEGIS SECURITY INSURANCE VS GLOBAL INDEMNITY INSUR
                    DOCKET: MID L -005109 16

     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 2.

     DISCOVERY IS   300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED IS:  HON JOSEPH REA

     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM        001
AT:  (732) 519-3728 EXT 3728.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                    ATTENTION:
                              ATT: MICHAEL F. ROMANO
                              ROMANO GARUBO & ARGENTIERI COU
                              PO BOX 456
                              52 NEWTON AVE
                              WOODBURY        NJ 08096-7456

JUDMJ

*Appendix XII-B1*



| | CIVIL CASE INFORMATION STATEMENT (CIS) | FOR USE BY CLERK'S OFFICE ONLY |
|---|---|---|
| | Use for initial Law Division Civil Part pleadings (not motions) under *Rule* 4:5-1 Pleading will be rejected for filing, under *Rule* 1:5-6(c), if information above the black bar is not completed or attorney's signature is not affixed | PAYMENT TYPE: ☐ CK ☐ CG ☐ CA<br>CHG/CK NO.<br>AMOUNT:<br>OVERPAYMENT:<br>BATCH NUMBER: |

| ATTORNEY / PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| Michael F.J. Romano, Esquire | (856) 384-1515 | Middlesex |

| FIRM NAME (if applicable) | DOCKET NUMBER (when available) |
|---|---|
| Romano Garubo & Argentieri, Counselors at Law LLC | MID-L- 05109-16 |

| OFFICE ADDRESS | DOCUMENT TYPE |
|---|---|
| 52 Newton Avenue, P.O. Box 456<br>Woodbury, New Jersey 08096 | Complaint |
| | JURY DEMAND   ☐ YES   ☒ NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
|---|---|
| Aegis Security Insurance Company, Plaintiff | Aegis Security Insurance Company v. Global Indemnity Insurance Agency, Inc., et al. |

| CASE TYPE NUMBER (See reverse side for listing)<br>599 | HURRICANE SANDY RELATED?<br>☐ YES   ☒ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE?   ☒ YES   ☐ NO<br>IF YOU HAVE CHECKED "YES", SEE *N.J.S.A.* 2A:53 A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
|---|---|---|
| RELATED CASES PENDING?<br>☐ Yes   ☒ No | | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)?<br>☐ Yes   ☒ No | | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)   ☐ NONE   ☒ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?<br>☐ Yes   ☒ No | IF YES, IS THAT RELATIONSHIP:<br>☐ EMPLOYER/EMPLOYEE   ☐ FRIEND/NEIGHBOR<br>☐ FAMILIAL   ☐ BUSINESS | ☐ OTHER (explain) |
|---|---|---|
| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?   ☒ YES   ☐ No | | |

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ Yes   ☒ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|
| WILL AN INTERPRETER BE NEEDED?<br>☐ Yes   ☒ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE



**Side 2**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I - 150 days' discovery**
151  NAME CHANGE
175  FORFEITURE
302  TENANCY
399  REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
502  BOOK ACCOUNT (debt collection matters only)
505  OTHER INSURANCE CLAIM (including declaratory judgment actions)
506  PIP COVERAGE
510  UM or UIM CLAIM (coverage issues only)
511  ACTION ON NEGOTIABLE INSTRUMENT
512  LEMON LAW
801  SUMMARY ACTION
802  OPEN PUBLIC RECORDS ACT (summary action)
999  OTHER (briefly describe nature of action)

**Track II - 300 days' discovery**
305  CONSTRUCTION
509  EMPLOYMENT (other than CEPA or LAD)
599  CONTRACT/COMMERCIAL TRANSACTION
603N AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
603Y AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
605  PERSONAL INJURY
610  AUTO NEGLIGENCE – PROPERTY DAMAGE
621  UM or UIM CLAIM (includes bodily injury)
699  TORT – OTHER

**Track III - 450 days' discovery**
005  CIVIL RIGHTS
301  CONDEMNATION
602  ASSAULT AND BATTERY
604  MEDICAL MALPRACTICE
606  PRODUCT LIABILITY
607  PROFESSIONAL MALPRACTICE
608  TOXIC TORT
609  DEFAMATION
616  WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
617  INVERSE CONDEMNATION
618  LAW AGAINST DISCRIMINATION (LAD) CASES

**Track IV - Active Case Management by Individual Judge / 450 days' discovery**
156  ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
303  MT. LAUREL
508  COMPLEX COMMERCIAL
513  COMPLEX CONSTRUCTION
514  INSURANCE FRAUD
620  FALSE CLAIMS ACT
701  ACTIONS IN LIEU OF PREROGATIVE WRITS

**Multicounty Litigation (Track IV)**

| | | | |
|---|---|---|---|
| 271 | ACCUTANE/ISOTRETINOIN | 290 | POMPTON LAKES ENVIRONMENTAL LITIGATION |
| 274 | RISPERDAL/SEROQUEL/ZYPREXA | 291 | PELVIC MESH/GYNECARE |
| 278 | ZOMETA/AREDIA | 292 | PELVIC MESH/BARD |
| 279 | GADOLINIUM | 293 | DEPUY ASR HIP IMPLANT LITIGATION |
| 281 | BRISTOL-MYERS SQUIBB ENVIRONMENTAL | 295 | ALLODERM REGENERATIVE TISSUE MATRIX |
| 282 | FOSAMAX | 296 | STRYKER REJUVENATE/ABG II MODULAR HIP STEM COMPONENTS |
| 285 | STRYKER TRIDENT HIP IMPLANTS | 297 | MIRENA CONTRACEPTIVE DEVICE |
| 286 | LEVAQUIN | 299 | OLMESARTAN MEDOXOMIL MEDICATIONS/BENICAR |
| 287 | YAZ/YASMIN/OCELLA | 300 | TALC-BASED BODY POWDERS |
| 288 | PRUDENTIAL TORT LITIGATION | 601 | ASBESTOS |
| 289 | REGLAN | 623 | PROPECIA |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics.

**Please check off each applicable category** ☐ Putative Class Action ☐ Title 59

ROMANO, GARUBO & ARGENTIERI
*Counselors at Law, LLC*
By: Michael F.J. Romano, Esquire
Attorney ID No.: 004451988
52 Newton Avenue, P.O. Box 456
Woodbury, NJ 08096
(856) 384-1515

CIVIL RECORDS
N.J. SUPERIOR COURT
MIDDLESEX VICINAGE

2017 JAN -6 P 1: 09

FILED & RECEIVED #4

Attorney for Plaintiff, Aegis Security Insurance Company

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION – MIDDLESEX COUNTY
DOCKET NO.: MID-L-5109-16

| | |
|---|---|
| AEGIS SECURITY INSURANCE COMPANY, : | |
| : | |
| Plaintiff, : | |
| : | **AMENDED COMPLAINT** |
| v. : | |
| : | |
| GLOBAL INDEMNITY INSURANCE AGENCY, INC. : | |
| and JOHN DOES I through V, : | |
| : | |
| Defendants : | |

Plaintiff, Aegis Security Insurance Company ("Aegis"), a surety company, by way of
Complaint against Defendant, Global Indemnity Insurance Agency, Inc. ("Global") and John Does I through
V, does hereby say:

1.  Aegis is a surety with a principal place of business located at 2407 Park Drive, Suite
200, Harrisburg, Pennsylvania 17110.

2.  Defendant, Global is believed to be a New Jersey Corporation conducting business at
20 Highland Avenue, Suite A, City of Metuchen, State of New Jersey 08840.

3.  Defendant John Does I through V are individuals and/or business entities who are or
who may become known to be involved in and/or liable to plaintiff in the matter set forth herein.

FACTUAL BACKGROUND

1.  Aegis hereby repeats and realleges the allegations contained in the foregoing
paragraphs as if same were more fully set forth herein at length.

2.  Beginning in around 2005, Aegis, a surety, commenced doing business with Global.

3.  Global, an insurance broker, would submit applications of prospective principals to

Aegis for purposes of issuing bonds on construction projects in New Jersey.

4.    Global contacted Aegis in early 2006 regarding a prospective principal on a municipal project in New Jersey.

## VILLAGE OF SOUTH ORANGE TOWNSHIP

5.    On or about January 12, 2006, Global submitted a proposal to Aegis seeking Aegis's approval to bond a municipal project in the Village of South Orange Township ("SOT") for the renovations and additions to a firehouse (the "SOT Project") on behalf of a principal called Parikh, Inc.

6.    As part of the Global proposal, Aegis, at the express request of Global, agreed to issue the bond but expressly conditioned the approval of the issuance of the bond on, among other things, obtaining separate bonds from major subcontracts; in effect all subcontracts in excess of $100,000.00 were to be bonded.

7.    Global specifically agreed to these conditions.

8.    On January 19, 2006, Aegis confirmed that the bond could be issued so long as subcontracts over $100,000.00 were bonded separately.

9.    At least three subcontracts were to exceed $100,000.00 including plumbing, electrical and HVAC.

10.    Global confirmed that the principal Parikh, Inc. was obtaining the bonds, but actually never procured bonds for any subcontractor of Parikh Inc.

11.    Global was aware and understood that if Global did not procure the separate bonds, Aegis would not issue the bond on the SOT Project.

12.    Global never advised Aegis that it did not procure the bonds but did issue the bond on the SOT Project.

13.    In addition, Global misrepresented to Aegis the value of a home owned by the principal, thus resulting in Aegis issuing the bond on the SOT Project believing it was receiving valuable collateral.  In fact, it received a valueless second mortgage.

14.  The SOT Project began to become problematic and Aegis received performance and payment bond claims as well as notice that its principal was being threatened with liquidated damages and termination.

15.  In fact, Parikh was grossly undercapitalized and did not have the manpower or the financial wherewithal to complete the SOT Project. Aegis was forced to complete the SOT Project and engage in protracted litigation to recover contract balances and defend claims for liquidated damages.

## FIRST COUNT
## NEGLIGENCE
### Aegis v. Global Indemnity Insurance Agency, Inc.

1.  Aegis hereby repeats and realleges the allegations contained in the foregoing paragraphs as if same were more fully set forth herein at length.

2.  Global owed a duty to Aegis to act as a reasonably competent agent with regard to its relationship with Aegis.

3.  Global negligently failed to obtain subcontract bonds from the plumbing, electrical and HVAC contractors on the SOT Project and also committed such other acts of negligence set forth hereinabove; and/or as otherwise may be discovered herein.

4.  The conduct of Global fell below the acceptable standards of care, skill and/or knowledge of an insurance professional.

5.  As a result of the aforesaid improper conduct and negligence, Aegis suffered reasonably foreseeable damages by, *inter alia*, issuing the bond at issue.

WHEREFORE, Plaintiff, Aegis Security Insurance Company, demands judgment against the Defendant, Global Indemnity Insurance Agency, Inc. and John Does I through V, in an amount to be determined at trial, but not less than the sum of $498,722.17, plus interest, attorney's fees, costs of suit and such other relief as may be deemed equitable and just by the Court.

## SECOND COUNT
## BREACH OF FIDUCIARY DUTY
### Aegis v. Global Indemnity Insurance Agency, Inc.

1.    Aegis hereby repeats and realleges the allegations contained in the foregoing paragraphs as if same were more fully set forth herein at length.

2.    Global has a fiduciary duty to Aegis under New Jersey law.

3.    Global breached its fiduciary duty to Aegis by failing to obtain subcontract bonds from the plumbing, electrical and HVAC contractors on the SOT Project, by representing to Aegis that the subcontract bonds had been and/or were being obtained and/or such other reasons as may be discovered herein.

4.    In addition, the foregoing conduct constitutes the breach of Global's duty of good faith and fair dealing and loyalty to Aegis.

5.    Global is liable to Aegis for damages proximately caused by its breach of the fiduciary duty and/or duty of good faith and fair dealing and loyalty to Aegis.

WHEREFORE, Plaintiff, Aegis Security Insurance Company, demands judgment against the Defendant, Global Indemnity Insurance Agency, Inc. and John Does I through V, in an amount to be determined at trial, but not less than the sum of $498,722.17, plus interest, attorney's fees, costs of suit and such other relief as may be deemed equitable and just by the Court.

## THIRD COUNT
## BREACH OF CONTRACT
### Aegis v. Global Indemnity Insurance Agency, Inc.

1.    Aegis hereby repeats and realleges the allegations contained in the foregoing paragraphs as if same were more fully set forth herein at length.

2.    Aegis and Global entered into a contract in January 2006 to allow the issuance of a bond on the SOT Project pursuant to certain express conditions including but not limited to the fact that all subcontracts in excess of $100,000.00 had to be bonded.

3.    This agreement was a material term to the contract between Aegis and Global.

4.  Global breached its contract with Aegis by failing to obtain subcontract bonds from the plumbing, electrical and HVAC contractors on the SOT Project, by representing to Aegis that the subcontract bonds were obtained and/or such other reasons as may be discovered herein.

5.  As a result, all of these acts constitute a breach of contract. As a result of this breach, Aegis has been damaged in an amount to be determined at trial but not less than the sum of $498,722.17 since in fact, Aegis relied on the contract between the parties and agreed to issue the bonds at issue based on the contract.

WHEREFORE, Plaintiff, Aegis Security Insurance Company, demands judgment against the Defendant, Global Indemnity Insurance Agency, Inc. and John Does I through V, in an amount to be determined at trial but not less than the sum of $498,722.17, plus interest, attorney's fees, costs of suit and such other relief as may be deemed equitable and just by the Court.

## FOURTH COUNT
## JOINT AND SEVERAL LIABILITY
### Aegis v. Global Indemnity Insurance Agency, Inc.

1.  Aegis hereby repeats and realleges the allegations contained in the foregoing paragraphs as if same were more fully set forth herein at length.

2.  As a result of the aforesaid improper conduct, breaches of contract, breaches of various fiduciary and contractual duties, and negligence, Aegis suffered reasonably foreseeable damages by, *inter alia*, issuing the bonds at issue which resulted in losses totaling at this time no less than $498,722.17.

WHEREFORE, Plaintiff, Aegis Security Insurance Company, demands judgment against the Defendant, Global Indemnity Insurance Agency, Inc. and John Does I through V, jointly and severally, in an amount to be determined at trial, but not less than the sum of $498,722.17, plus interest, attorney's fees, costs of suit and such other relief as may be deemed equitable and just by the Court.

## DESIGNATION OF TRIAL COUNSEL

PLEASE TAKE NOTICE that pursuant to Rule 4:25-4, Michael F.J. Romano, Esquire is hereby designated as trial counsel for Plaintiff in the captioned matter.

### NOTICE PURSUANT TO RULES 1:5-1(a) AND 4:17-4(c)

PLEASE TAKE NOTICE that the undersigned attorney, counsel for Plaintiff, does hereby demand pursuant to Rules 1:5-1(a) and 4:17-4(c) that each party herein serving pleadings and interrogatories and receiving answers thereto serve copies of such pleadings and answered interrogatories received from any party upon the undersigned attorney.  This demand is deemed to be continuing.

### CERTIFICATIONS PURSUANT TO
### RULES 4:5-1 and 4:5-1(d)

The undersigned, Michael F.J. Romano, Esquire, certifies the following:

1.      This answer has been filed and served within the time period allowed by the Court Rules.

2.      To the best of my knowledge and belief, this matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, and no other action or arbitration proceeding is contemplated.

3.      To the best of my knowledge and belief, there are no other parties who must be joined in this action.

### CERTIFICATION PURSUANT TO
### RULE 1:38-7(b)

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all document submitted in the future in accordance with Rule 1:38-7(b).

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

ROMANO, GARUBO & ARGENTIERI
Counselors at Law LLC
Attorney for Plaintiff, Aegis Security Insurance Company

Dated: 1-5-17

Michael F.J. Romano, Esquire

EXHIBIT

I

JON M. BRAMNICK
JOHN C. RODRIGUEZ
GARY J. GRABAS
JONATHAN P. ARNOLD
PATRICK J. MANGAN
CARL A. SALISBURY
DANIEL G. SLOAN
KELLY A. LYNCH
ROBERT C. ROWBOTHAM, II
BRIAN J. TREMBLEY
BRENT A. BRAMNICK
MICHAEL NORIEGA
SUSAN E. KINSELA
RICHARD M. BROCKWAY
JOSÉ VILARIÑO
ANNE MARIE BRAMNICK

o CERTIFIED BY THE SUPREME COURT
OF NEW JERSEY AS A CIVIL TRIAL
ATTORNEY
‡ CERTIFIED BY THE SUPREME COURT
OF NEW JERSEY AS A WORKERS
COMPENSATION ATTORNEY
^ MEMBER OF NJ. & N.Y. & PA. BARS
§ MEMBER OF N.J. & N.Y. BARS
* MEMBER OF N.J. & PA. BARS

**BRAMNICK, RODRIGUEZ,
GRABAS, ARNOLD & MANGAN, LLC**
ATTORNEYS AT LAW
1827 EAST SECOND STREET
SCOTCH PLAINS, NEW JERSEY 07076
908 322 7000
FAX 908. 322.0997
www.bramnicklaw.com
Email: jonbramnick@jonbramnick.com

January 20, 2017

<u>*VIA FEDERAL EXPRESS*</u>

Alexander Ko, Esq.
Senior Claims Specialist
Catlin Specialty Insurance Company
32 Old Slip, 36th Floor
New York, NY 10005

Re:  Global Indemnity Insurance Agency, Inc.
     Catlin Specialty Insurance Company
     Village of South Orange Matter
     Policy No. IAL-700083-1115 (11/26/15 – 11/26/16)
     Your file No.: NYS-PL-160325

Dear Mr. Ko:

As you may recall, we have been retained to provide insurance coverage advice to Global Indemnity Insurance Agency, Inc. in connection with a claim for coverage under Professional Liability policy no. IAL-700083-1115 for the referenced matter. I have been served with an Amended Complaint that has been filed by Aegis Security Insurance Company against Global in connection with this matter. I have attached a copy of the Summons and Amended Complaint.

The purpose of this letter is to tender the defense and the indemnity in this action upon Catlin Specialty Insurance Company for the claims against Global. Please take all steps that may be necessary and proper to protect the interests of Catlin's insured.

If you have questions about this notice, kindly let me know.

1

Thank you.

Sincerely,
**Bramnick, Rodriguez, Grabas, Arnold & Mangan**

By: Carl A. Salisbury
Carl A. Salisbury

cc:  Timothy J. Wagner (via email)
Demetra Bristow (via email)
Jason Meisner, Esq. (via email)

2

# ROMANO GARUBO & ARGENTIERI
### Counselors at Law LLC

Michael F.J. Romano, Member *
mromano@rgalegal.com

Angelo G. Garubo, Of Counsel **
agarubo@rgalegal.com

Emmanuel J. Argentieri, Member*
eargentieri@rgalegal.com

52 Newton Avenue
P.O. Box 456
Woodbury, NJ 08096
Telephone: (856) 384-1515
Telefax: (856) 384-6371

Louis W. Skinner *
lskinner@rgalegal.com

*Member of the NJ & PA Bar
**Member of the NJ & NY Bar

January 18, 2017

Carl A. Salisbury
Brannick, Rodriguez, Grabas, Arnold & Mangan
1827 East Second Street
Scotch Plains, NJ 07076

**VIA EMAIL**

Re:   Aegis Security Insurance Company v. Global Indemnity Insurance Agency, Inc. and John
      Does I through V
      Docket No. MID-L-05109-16
      <u>Our File No. 219-ASIC-005</u>

Dear Mr. Salisbury:

As you know, this office represents surety Aegis Security Insurance Company ("Aegis")
with regard to the above-referenced matter.

Enclosed herein please find a Summons, Civil Case Information Statement, Track
Assignment Notice and the filed Amended Complaint.  Also enclosed please find our Acceptance of
Service form.  Kindly sign the Acceptance of Service and return the original to my office via email and
regular mail at your earliest convenience.

Thank you.

Very truly yours,

MICHAEL F.J. ROMANO, ESQUIRE

MFJR:ty
Enclosures

cc:  client - via email

---

*Of Counsel:*

Michael D. Bloom, Esquire
44 Nelson Place, P.O. Box 13
Tenafly, NJ 07670
Telephone: (201) 266-4351
Telefax: (201) 356-9149
Member of NJ, NY, FL & DC Bar

Evan J. Salon, Esquire
52 Newton Avenue, P.O. Box 456
Woodbury, NJ 08096
Telephone: (856) 384-1515
Telefax: (856) 384-6371
Member of NY, NJ & CA Bar

EXHIBIT

J



XL CATLIN

Catlin Specialty Insurance Co

Alexander Ko, Esq
Senior Claims Specialist
200 Liberty Street, 22nd Floor
New York, NY 10281
USA

Tel  +1 212 857 4042
alexander.ko@xlcatlin.com
www.xlcatlin.com

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Mr. Carl Salisbury
Bramnick, Rodriguez, Grabas, Arnold & Mangan, LLC
1827 East Second Street
Scotch Plains, NJ 07076

10 February 2017

Re:   Named Insured:     Global Indemnity Insurance Agency, Inc.
      Insurer:           Catlin Specialty Insurance Company
      Matter:            Village of South Orange Firehouse Project
      Policy No.:        IAL-700083-1115 (11/26/2015– 11/26/2016)
      Our File No.:      NYS-PL-160325

Dear Mr. Salisbury:

The purpose of this letter serves to inform you that based on Catlin Specialty Insurance Company's ("Catlin") investigation and review of the materials/information provided to date, it has determined that coverage and/or indemnification for this Claim continues to be unavailable under Catlin's Policy. This letter shall supersede any prior correspondence issued by Catlin in regard to the above-captioned matter.

**Factual Background**

Please note we have received your correspondence dated January 20, 2017 advising that you have been served with an Amended Complaint filed on January 6, 2017 in the Superior Court of New Jersey, Law Division – Middlesex County by Aegis Security Insurance Company ("Aegis") against Global Indemnity Insurance Agency, Inc. ("Global"). In its Amended Complaint, Aegis makes allegations against Global for negligence; breach of fiduciary duty; and breach of contract. Specifically, on or about January 12, 2006, it is alleged Global submitted a proposal to Aegis seeking their approval to bond a municipal project in the Village of South Orange Township ("SOT") for renovations and additions to a firehouse on behalf of a principal named Parikh, Inc. Aegis agreed to issue the bond but expressly conditioned approval of the issuance of the bond on, among other things, obtaining separate bonds from major subcontracts; in effect all subcontracts in excess of $100,000 were to be bonded. Global allegedly agreed to these conditions. Aegis alleges at least three SOT Project subcontracts were to exceed $100,000 including plumbing, electrical, and HVAC. Global confirmed that the principal Parikh, Inc. was obtaining the bonds; however, no bonds for any subcontractor were procured. Global never advised Aegis that it did not procure the subcontract bonds but did issue the bond on the SOT Project. The SOT Project began to become problematic and Aegis

received performance and payment bond claims as well as notice that its principal was being threatened with liquidated damages and termination. It was discovered that Parikh, Inc. was grossly undercapitalized and did not have the manpower or the financial capability to complete the SOT Project which forced Aegis to complete the SOT Project and engage in litigation to recover contract balances and defend claims for liquidates damages. The letter then concludes by advising the purpose of the correspondence is to tender the defense and indemnity in the aforementioned litigation upon Catlin Specialty Insurance Company for all claims against Global.

Previously, we were in receipt of a demand for settlement set forth in a letter, dated February 29, 2016, to Coughlin Duffy, LLP, as counsel for Global Indemnity Insurance Agency, Inc., from Romano Garubo & Argentieri, counsel to Aegis Security Insurance Company with regard to an ongoing litigation between Aegis and Global. Specifically, the letter references a Fourth-Party Complaint filed against Global on March 18, 2013 in the litigation styled _First Surety Financial, LLC v. Borough of Washington v. Aegis Security Insurance Company_, and to a Tolling Agreement, dated November 22, 2013, entered into between Aegis and Global. According to the letter, pursuant to the Tolling Agreement, Aegis agreed to and did voluntarily dismiss its Fourth Party Complaint against Global, without prejudice.

In the letter, Aegis contends, after have reviewed various bonds issued by Global pursuant to their agency agreement, several bonds issued by Global have resulted in substantial losses to Aegis. However, for settlement purposes, the letter references only the two following projects: (1) Consolidated Building Corp. on the Borough of Washington Municipal Building and Salt Shed Project (the "BOW Project"), and (2) Parikh Inc. on the Village of South Orange Township Firehouse Fourth Project (the "SOT Project"). Aegis alleges that it incurred a loss of $1,189,700.49 resulting from the BOW Project, and a loss of $542,523.21 resulting from the SOT Project, and demands a total of $1,732,223.70 from Global, as well as $77,632.82 for unpaid premium by Global.

With regard to the BOW Project, Aegis alleged that Global failed to disclose the financial condition of the principal, and failed to require the issuance of a subcontractor bond, among other things. Aegis contends Global engaged in fraudulent and tortious conduct by breaching its common law duty to act as a reasonable agent in binding Aegis to the BOW project bond.

With regard to the SOT Project, Aegis alleged that Global filed to satisfy specific conditions for the project, that Global made financial misrepresentations which were material to Aegis' financial decision-making, and that Global failed to obtain bonding for subcontractors.

Pursuant to the Claim tender received by Catlin on or about March 3, 2016, Catlin was instructed to focus on Aegis' demand only with regard to the SOT project, and to disregard Aegis' demand with regard to the BOW project and the Fourth-Party Complaint.

**The Catlin Policy**

Catlin issued an Insurance Agency Professional Liability Insurance Policy, No. 1AL-700083-1115, to Global Indemnity Insurance Agency Inc. for the November 26, 2015 to November 26, 2016 Policy Period (the "Policy"). The Policy provides a $2,000,000 Limit of Liability for each Claim and in the Aggregate, as well as $25,000 for Regulatory Proceedings. The Policy also provides $250 per day for each Claim and $5,000 in the Aggregate for Litigation Expenses, and $25,000 for Subpoena Expenses. Coverage is subject to a $50,000 Retention for each Claim.

Please note that Section I., *Insuring Agreement,* provides the following:[1]

The Insurer shall pay, on behalf of the Insured, Loss which the Insured becomes legally obligated to pay because of a Claim that is both made against the Insured and reported to the Insurer in writing during the Policy Period or Discovery Period, if applicable, for a Wrongful Act committed solely in the rendering or failing to render Professional Services for a Client, provided:

1. Such Wrongful Act occurred on or after the Retroactive Date; and

2. As of the inception date of this Policy, or the first policy issued to the Named Insured by the Insurer or any of the Insurer's parents, subsidiaries or affiliates of which this Policy is the last in a series of continuously renewed policies, no Insured had knowledge or reasonable basis upon which to anticipate that the Wrongful Act or any Interrelated Wrongful Act could result in a Claim.

Also, please be advised o f the following definitions, set forth in Section IV of the Policy:

C. Claim means a written demand received by any Insured for monetary damages (including pleadings received in a civil litigation, arbitration, mediation or alternative dispute resolution) for an actual or alleged Wrongful Act. A Claim does not include the following:

1. a demand for declaratory, injunctive or other non-monetary relief;

2. any form of criminal proceedings;

3. any demand by a governmental or quasi-governmental official or agency or any self- regulatory official or agency except if the agency or official is a Client of the Insured in connection with the rendering of Professional Services.

D. Client means an individual, company or entity for whom or which an Insured renders Professional Services to gain monetary compensation.

G. Insured means:

1. the Company or any Predecessor Firm;

H. Interrelated Wrongful Acts means any Wrongful Acts that are:

1. similar, repeated or continuous; or

2. connected by reason of any common fact, circumstance, situation, transaction, causality, event, decision or policy or one or more series of facts, circumstances, situations, transactions, casualties, events, decisions or policies.

Q. Professional Services are solely limited to the following activities undertaken pursuant to a valid license in both the state where an Insured is located and the state where a Client is located or transaction is undertaken:

1. the soliciting, placing, selling or servicing of any of the following:

a. property and casualty insurance;

U. Wrongful Act means a negligent act, error or omission or Personal Injury committed by an Insured or any natural person for whose Wrongful Acts the Insured is legally responsible solely

---

[1] The following policy provisions are provided for your easy reference. Please read the entire Policy to determine what is and what is not covered.

3

in the rendering of or failing to render Professional Services.

In addition, Section IX of the Policy provides the following:

Single Claim and Retention/Interrelated Wrongful Acts

All claims based upon or arising out of the same Wrongful Act or Interrelated Wrongful Acts shall be considered a single Claim and each such single Claim shall be deemed to have been made on the earlier of the following:
A. when the earliest Claim arising out of such Wrongful Act or Interrelated Wrongful Acts was first made; or
B. when notice was provided to the Insurer pursuant to Section VIII.B. herein concerning a Wrongful Act giving rise to such Claim.

Section V., Exclusions, provides, in pertinent part, that this Policy shall not apply to and the Insurer shall not pay Loss for any Claim:

* * *

D. arising out of, based upon or in any way involving any fact, circumstance or situation which has been the subject of any written notice given under any policy of which this Policy is a direct or indirect renewal or replacement or any other policy which preceded this Policy.

E. arising out of, based upon or in any way involving any known prior or pending litigation against any Insured filed on or before the Effective Date of this Policy or under any other policy of which this Policy is a direct or indirect renewal or replacement, whichever is earlier, or which is related in any way to the same or substantially the same facts, circumstances or situations which are the subject of or the basis for such prior and pending litigation.


**Coverage Analysis**

Catlin previously obtained and reviewed a copy of the Fourth-Party Complaint and the November 22, 2013 Tolling Agreement. The Fourth-Party Complaint includes, among other things, specific allegations pertaining to the BOW Project including that Global misrepresented the financial condition of the principal, Consolidated Building Corp., and alleges the following causes of action: breach of contract, breach of fiduciary duty, and negligence. The 2013 Tolling Agreement specifically references allegations contained in the Fourth-Party Complaint (the Asserted Claims), as well as the fact that Aegis is continuing to investigate whether it has any other claims against Global (the Non-Asserted Claims). The Tolling Agreement stayed all claims, counterclaims, etc., that may relate to the issues and/or causes of action that pertain to both Asserted Claims and Non-Asserted Claims. By entering into the Tolling Agreement, Aegis agreed to dismiss the Fourth-Party Complaint without prejudice while Aegis and Global pursued a settlement of the Asserted and Non-Asserted Claims stemming from the Surety Agent Agreement.

As the Tolling Agreement was to expire on March 15, 2016, the February 29, 2016 letter contains a settlement demand by Aegis in an effort to resolve the Asserted and the Non Asserted Claims. We note that the allegations concerning the BOW Project pertain to an Asserted Claim as these allegations were included in the Fourth Party Complaint. Also, we again note and now highlight that the allegations pertaining to the SOT Project pertain to a Non-Asserted Claim as these allegations were not expressly included in the Fourth-Party Complaint. However, Non-Asserted Claims, which include the allegations pertaining to the SOT Project, specifically were included in the 2013 Tolling Agreement.

4

Based on our review of the documents received, please be advised that Aegis' allegations concerning the SOT Project are related to the allegations concerning the BOW Project. Both projects arise out of the Surety Agent Agreement between Aegis and Global, whereby Global became the agent of Aegis. In addition, for both projects, Aegis alleges that Global misrepresented the financial condition of the principals, failed to ensure that subcontractors were properly bonded, and otherwise failed to comply with specific conditions set forth by Aegis. As such, the allegations regarding the BOW and SOT Projects constitute Interrelated Wrongful Acts. In conjunction with the foregoing, Aegis's SOT Project allegations contained in the January 6, 2017 Amended Complaint are now being brought against Global. These allegations similarly constitute Interrelated Wrongful Acts as they arise out of the exact same facts and circumstances.

As referenced above and as previously advised in our July 14, 2016 supplemental coverage position disclaiming coverage for this matter, the Policy's Insuring Agreement requires that Claims be both made against the Insured and reported to the Insurer in writing during the Policy Period. Inasmuch as the allegations pertaining to the SOT Project are Interrelated Wrongful Acts to those alleged in the Fourth-Party Complaint, the SOT Project Claim continues to be viewed as first made in 2013 when the Fourth-Party Complaint was filed. Because the SOT Project Claim was not first made during the November 26, 2015 to November 26, 2016 Policy Period, it does not trigger coverage under the Policy. Consequently, Catlin respectfully disclaims coverage on this basis.

In addition, please be advised that Exclusion E, referenced above, precludes cover for this matter as the SOT Project is related to the allegations contained in the Fourth-Party Complaint, as well as the 2013 Tolling Agreement. The SOT Project involves the same or substantially the same facts, circumstance or situations which are the subject of the Fourth-Party Complaint which was filed prior to the Effective date of the Policy. Also, claims – and potential claims – arising from the BOW and SOT Projects, among others, are included in the 2013 Tolling Agreement. Consequently, on this basis as well, Catlin respectfully disclaims coverage for this matter.

While we believe the above to be dispositive, please note that coverage for this matter also may be precluded by Policy Exclusions D, referenced above. The application for insurance, dated November 11, 2014, submitted by Global to Catlin references a pending litigation filed by Aegis concerning the failure to ensure that subcontractors were properly bonded. As the litigation referenced in the application and the Fourth-Party Complaint appear to be one in the same, and appear to have been reported to Global's prior carrier, Exclusion D would apply. Please be advised that Catlin reserves the right to deny coverage on this basis.

**Conclusion**

As the SOT Project claim is related to the Fourth-Party Complaint, we continue to strongly advise you to notify Global's prior carrier of this matter, if you have not already done so.

If you believe that there is additional information that should be considered by Catlin please provide such information to the undersigned for review. Please do not hesitate to contact the undersigned if you have any questions or comments regarding Catlin's coverage position or if you would like to discuss this matter in greater detail.

Please note that the above-mentioned definitions, exclusions, and/or Policy provisions are not intended to be an exhaustive list that apply or may apply to this matter. Catlin reserves any and all rights it may have or may subsequently acquire under the Policy, at law and in equity, including the right to assert any further

coverage and Policy defenses as basis for the position that coverage is not afforded for this matter irrespective of whether or not they have been specifically referred to in this letter.

Sincerely,

Alexander Ko, Esq.
Senior Claims Specialist

cc:

**VIA CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED**

Ms. Demetra Bristow
Global Indemnity Insurance Agency, Inc.
20 Highland Avenue
Metuchen, NJ 08840

Hull & Company
1050 Wall Street West, Suite 330
Lyndhurst, NJ 07071

6

EXHIBIT K

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Agreement") is by and between Aegis Security Insurance Company ("Aegis") and Global Indemnity Insurance Agency, LLC and Global Indemnity Insurance Agency, Inc. (referred to collectively and individually as "Global") (Aegis and Global are referred collectively to as the "Parties").

### Background

A.      Global and Aegis, as well as others, were parties to a lawsuit captioned *First Surety Financial, LLC v. Borough of Washington, Superior Court of New Jersey, Warren County, WRN-L-430-10* (the "BOW Lawsuit").

B.      The BOW Lawsuit relates to certain disputes arising out of the construction of a municipal garage for the Borough of Washington ("BOW"), including claims asserted by Aegis against Global (the "BOW Claims"), as more specifically set forth in the various pleadings filed in the BOW Lawsuit.

C.      Aegis and Global agreed to allow the BOW Lawsuit to go forward to verdict in binding arbitration while the Fourth-Party Complaint would be the subject of that certain Tolling Agreement which was originally executed on November 22, 2013 which establishes and defines an Effective Date of March 18, 2013 and which has been continually mutually extended through August 31, 2016. The Tolling Agreement covers not only claims actually asserted in the BOW Lawsuit against Global (the "Asserted Claims") *but also covered additional claims against Global which were not asserted in the BOW Lawsuit* ("Non-Asserted Claims").

D.      The parties also participated in Mediation before the Honorable Michael B. Fisher, J.S.C. (retired) which mediation did not result in settlement of the BOW Lawsuit but the parties agreed to enter into a Tolling Agreement with regard to the Asserted and Non-Asserted Claims and the BOW claim would proceed to binding arbitration before retired Superior Court of New Jersey Judge Mecca. The terms of the Tolling Agreement are incorporated herein by this reference.

E.      Aegis and BOW argued the BOW Lawsuit and the matter went to verdict in binding arbitration before Judge Mecca in favor of BOW in the net amount of $90,860.86.

F.      The Tolling Agreement between the parties, which establishes and defines an Effective Date of March 18, 2013, and which has been continually mutually extended through August 31, 2016, is hereby extended again as a result of the ongoing negotiations between the parties culminating and embodied in this Settlement Agreement through January 31, 2017.

G.      The Tolling Agreement effectively stayed the running of any periods of limitation, statutes of limitations and statutes of repose that relate or may relate to the issues and/or causes of action that give rise to the Asserted Claims and Non-Asserted Claims, as of the Effective Date, March 18, 2013 ("Tolling Period").

H.      On or about February 11, 2016, Aegis made demand on Global for settlement in

full of the Asserted and Non-Asserted Claims which included the BOW claim and certain disputes arising out of professional negligence and losses suffered in relation to a project involving the construction of a firehouse for South Orange Township ("SOT" claim), as well as claims for unpaid premium owed to Aegis by Global.

I.      On or aboutMarch 2, 2016, Global notified the separate carriers for Global on the BOW claim and the SOT claim.

J.      As of the date of the Aegis demand, the carrier for Global on the BOW claim had already accepted coverage of the BOW claim. However, the notice which was sent by Global on March 2, 2016, was the first notice to its carrier, Catlin Specialty Insurance Company ("Catlin"), of the SOT claim.

K.      In March, 2016, the parties agreed to submit the claims to mediation before Judge Fisher.

L.      On March 14, 2016, Catlin denied coverage of the SOT claim.

M.      Thereafter, Catlin elected to provide a defense under reservation of rights as the parties prepared for mediation on August 16, 2016.

N.      On July 14, 2016, a little more than a month prior to the mediation, Catlin, having realized its first denial was meritless, again attempted to deny coverage and ordered that its appointed counsel withdraw from representation at the mediation.

O.      On August 16, 2016, the parties mediated the case before Judge Fisher but failed to reach a settlement.

P.      On or about August 31, 2016, Aegis filed a lawsuit captioned *Aegis Security Insurance Company v. Global Indemnity Insurance Agency, Inc. et al.,* Superior Court of New Jersey, Law Division, Middlesex County, MID- L-005109-16 (the "Global Lawsuit").

Q.      The Global Lawsuit relates to the SOT Claims as well as the BOW Claims, as more specifically set forth in the Complaint filed in the Global Lawsuit.

R.      The parties have reached an agreement on terms satisfactory to all of them which will resolve all disputes, claims and potential claims between and amongst all of them.

**NOW, THEREFORE**, on this ____day of January, 2017, for and in consideration of the mutual promises and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which the Parties acknowledge, and intending to be legally bound, the Parties agree as follows:

1.      <u>Incorporation of Background</u>

        The paragraphs set forth in the Background section above are incorporated herein as if set forth at length.

2.   <u>Terms of Settlement.</u>

      a.    The BOW and Global Lawsuit shall be dismissed with prejudice as to the BOW claim only upon payment to Aegis in the amount of $475,000.00 which shall occur within thirty (30) days of the execution by all parties of this Agreement;

      b.    Global shall pay to Aegis the sum of $80,000.00 on account of all unpaid premium claims though the date of this Agreement  which shall occur within thirty (30) days of the execution by all parties of this Agreement;

      c.    Aegis agrees to amend the Global Lawsuit to pursue the SOT claim only;

      d.    Counsel for Global will accept service of process on Global by email and will tender the defense of the Global Lawsuit to Catlin;

      e.    If Catlin provides a defense to Global, Aegis will pursue the Global Lawsuit (as amended above) in the normal course and Aegis may pursue the balance owed to it for unpaid premiums less the $80,000.00 already paid pursuant to this Agreement;

      f.    If Catlin denies Global a defense of the Global Lawsuit, Aegis and Global agree to the entry of a Consent Judgment in favor of Aegis in the amount of $498,722.17, subject to presentation by the parties of evidence to Judge Fisher regarding the reasonableness of the amount of the Consent Judgment and Judge Fisher's preparation of his findings of fact and conclusions of law;

      g.    The parties will submit Judge Fisher's findings of fact and conclusions of law to the Superior Court, Law Division in the Global Lawsuit as part of a proposed form of Consent Judgment;

      h.    In connection with the Consent Judgment, Global will assign to Aegis any and all claims of Global against Catlin and Aegis will commence litigation against Catlin seeking payment of the Consent Judgment (the "Catlin Lawsuit"). Aegis shall retain counsel of its choosing to represent its interests in the Catlin Lawsuit, provided that the hourly rates of such counsel shall not exceed $450 per hour for partners, $300 per hour for associates and $125 for paralegals. The Parties agree to reasonably cooperate with one another in prosecuting the Catlin Lawsuit.  Aegis agrees that it shall take no action to enforce the Consent Judgment against Global and will furnish to Global a warrant of satisfaction of the Consent Judgment regardless of the outcome of the Catlin Lawsuit but only after all avenues of recovery against Catlin are exhausted;

      i.    In the event that Catlin prevails in the Catlin Lawsuit and coverage is denied, Global must reimburse Aegis for all the legal fees expended by Aegis regarding the Catlin Lawsuit as well as additional earned premium in the amount of $28,989.82;

      j.    In the event Aegis prevails for a sum less than $300,000.00 against Catlin,

Global must reimburse Aegis for half of the legal fees incurred by Aegis as well as half of the additional $28,898.82 for earned premium; and

        k.     In the event Aegis prevails in the Catlin Lawsuit for a sum in excess of $300,000.00, Global is not responsible to reimburse Aegis for any of its legal fees and/or the additional earned premium;

3.    **Mutual Releases**

        a.     Subject to the Terms of Settlement set forth in paragraph 2 above, Aegis, on behalf of itself and successors, subrogees and assigns, does fully and completely release and forever discharge Global, and its parent companies, related and affiliated companies, principals, predecessors, successors, assigns, present and past directors, officers, attorneys, agents, members, employees, shareholders, and/or stockholders, wherever and whenever doing business (collectively as the "Global Entities") from any and all claims and potential claims, of any and every kind, known or unknown, for anything which has happened up to the date of this Agreement including but not limited to any claims arising out of or which could have arisen out of that certain litigation including but not limited to the BOW Lawsuit, the Global Lawsuit, the Catlin Lawsuit, and/or the action captioned Global Indemnity Insurance Agency, LLC v. Wagner, et al., Superior Court, J.D. Hartford at Hartford, State of Connecticut, Docket No.: HHD-CV15-6056795-S. Nothing herein shall be construed as a waiver or release by Aegis of any of its rights, defenses, and/or remedies as to any other parties other than the Global Entities at law, in equity and/or under any contract including but not limited to any agreement of indemnity. Aegis specifically reserves all such rights, defenses, and/or remedies.

        b     Subject to the terms of Settlement set forth in paragraph 2 above, the Global Entities, on behalf of themselves and successors, subrogees and assigns, do fully and completely release and forever discharge Aegis, and its parent companies, related and affiliated companies, predecessors, successors, assigns, present and past directors, officers, attorneys, agents, members, employees, shareholders, and/or stockholders wherever and whenever doing business (collectively as the "Aegis Entities"), from any and all claims and potential claims, of any and every kind, known or unknown, for anything which has happened up to the date of this Agreement including but not limited to any claims arising out of or which could have arisen out of that certain litigation including but not limited to the BOW Lawsuit, the Global Lawsuit, the Catlin Lawsuit, and/or the action captioned Global Indemnity Insurance Agency, LLC v. Wagner, et al., Superior Court, J.D. Hartford at Hartford, State of Connecticut, Docket No.: HHD-CV15-6056795-S.

4.    **Stipulation of Dismissal/Satisfaction of Judgment**

        The Parties, through their respective counsel, shall execute an appropriate Stipulation of Dismissal dismissing with prejudice all claims that have been asserted by the Parties against one another in the BOW Lawsuit and/or Global Lawsuit other than as relates to the SOT Lawsuit. Upon the entry of a binding final judgment in the Catlin Lawsuit and payment of said judgment to Aegis, and so long as it does not adversely affect the rights to a recovery by Aegis in the Catlin Lawsuit, Aegis will cause to be submitted to counsel for Global an executed

warrant to satisfy the Global Lawsuit Consent Judgment.

5.   **Acknowledgments and Representations**

The Parties expressly represent, warrant and acknowledge that: (a) each has read this Agreement and has fully informed itself of its terms, conditions and effect; (b) in entering in to this Agreement, each has had the benefit of the advice of counsel upon which it has relied; (c) each executes this Agreement voluntarily and without coercion; and (d) each fully understands all of its terms and conditions and that this is a full, complete and final settlement agreement as to all disputes were or could have been asserted in the Lawsuit, which otherwise arise or relate to the Claim or Lawsuit.

6.   **Integration, Amendment, Severability and Survival**

a.   This Agreement contains the entire agreement of the Parties with respect to the subject matter hereof, and there are no inducements, representations, warranties, or understandings that do not appear within the terms and provisions of this Agreement

b.   This Agreement may not be modified except in writing signed by all the Parties. No waiver of any breach hereof shall be deemed a waiver of any subsequently occurring or subsequently discovered breach.

c.   This Agreement may be executed in one or more counterparts, but all such counterparts shall be deemed a single agreement.

d.   Each individual signing this Agreement warrants and represents that he has the full authority and is duly authorized and empowered to execute this Agreement on behalf of the Party for which he signs.

e.   If any of the provisions, terms or clauses of this Agreement are declared illegal, unenforceable, or ineffective in a legal forum, those provisions, terms and clauses shall be deemed severable, such that all other provisions, terms and clauses of this Agreement shall remain valid and binding upon all Parties of this Agreement their heirs, executors, successors and/or assigns.

7.   **Applicable Law and Jurisdiction**

The Parties understand and agree that this Agreement shall be construed under and governed by the laws of the State of New Jersey. However, if any provisions hereof are in conflict with the terms or provisions of the Bonds or Agreement of Indemnity, then the terms of this Agreement shall supersede. Moreover, if any provisions of this Agreement are in conflict with any statute or law and therefore not valid or enforceable, then such provision shall be deemed null and void but to the extent of such conflict only and without invalidating or affecting the remaining provisions thereof.

8.    **Miscellaneous**

    a.    This Agreement may be executed in multiple counterparts, each of which shall constitute an original.

    b.    A facsimile or electronic signature shall be deemed an original for all uses and purposes, except this shall not be construed as relieving any party from an obligation of executing and forwarding the original signature page if so requested.

    c.    This Agreement shall be deemed to have been drafted by each of the Parties to the Agreement.

    d.    This Agreement is binding upon and inures to the benefit of the Parties and their successors, assigns, agents, directors, officers, employees, representatives, attorneys, affiliates, heirs, and all persons acting by, through, under or in concert with them.

    e.    As applicable, each of the Parties has executed this Agreement or caused the Agreement to be executed on its behalf by its duly authorized officer or representative.

9.    **Confidentiality**

    The Parties agree that this Agreement and its terms are confidential and shall not be disclosed to any third party except (a) to the extent necessary to give effect to the settlement referenced herein and to enforce the rights of the parties hereto; (b) to the extent necessary to comply with the disclosure requirements of any federal, state or local agency charged with regulation of securities or taxation of entities; and (c) to their insurance carriers, banks, auditors, attorneys, and similar professionals, as necessary in the ordinary course of business, provided that those entities are informed of the confidential nature of this Agreement and agree to abide by its terms.

    **IN WITNESS WHEREOF,** in intending to be legally bound hereby:

WITNESS:                                             **AEGIS SECURITY INSURANCE COMPANY**

*Beverly A. Bailey*                                  BY: _Brett R Crise_____ (SEAL)
                                                          _Brett G Crise_____ (name)
                                                          _C F O_____ (title)

Date: _2/3/17_____

WITNESS:

Date: 1/17/2017

WITNESS:

Date: 1/17/2017

GLOBAL IMDENMITY INSURANCE
AGENCY, ~~LLC~~ Inc. TJW

BY: _Timothy J. Wagner_ (SEAL)
_Timothy J. Wagner_ (name)
_President_ (title)

GLOBAL IMDENMITY INSURANCE
AGENCY, INC.

BY: _Timothy J. Wagner_ (SEAL)
_Timothy J. Wagner_ (name)
_President_ (title)

Page 7 of 7

EXHIBIT L

MID L 005109-16   07/27/2017   Pg 1 of 3 Trans ID: LCV201782546
MID L 005109-16   06/12/2017   Pg 1 of 4 Trans ID: LCV201732120

**ROMANO GARUBO & ARGENTIERI**
*Counselors at Law LLC*
By: Michael F.J. Romano, Esquire
Attorney ID No: 004451988
52 Newton Avenue, P.O. Box 456
Woodbury, NJ 08096
(856) 384-1515

**FILED**

JUL 26 2017

JANE B. CANTOR, J.S.C.

Attorney for Plaintiff, Aegis Security Insurance Company
=================================================================

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION – MIDDLESEX COUNTY
DOCKET NO.: MID-L-5109-16

AEGIS SECURITY INSURANCE COMPANY,   :
                                     :
                 Plaintiff,          :
                                     :
        v.                           :        **CONSENT JUDGMENT**
                                     :
GLOBAL INDEMNITY INSURANCE           :
AGENCY, INC and JOHN DOES I through V, :
                                     :
                 Defendants          :

      THIS MATTER being opened to the Court by Romano Garubo & Argentieri, Attorneys for Aegis Security Insurance Company ("Aegis") and Jason A. Meisner, Esquire representing Global Indemnity Insurance Agency, Inc. ("Global"); and both counsel for plaintiff and defendant hereby represent and warrant that they are fully authorized to bind the Parties to the terms and conditions of this Consent Judgment and to make all representations on behalf of the Parties herein, and defendants herein admitting that each of them have been properly served with original process herein; and this Consent Judgment being executed by the Parties and filed with the Court herein; and for good cause shown;

      WHEREAS, on or about August 31, 2016 Aegis filed its Complaint, which was amended and an Amended Complaint was filed herein on January 6, 2017;

      WHEREAS, service of the Amended Complaint was completed on January 18, 2017 proof of service was filed with the Court on January 27, 2017;

1023

MID L 005109-16    07/27/2017     Pg 2 of 3 Trans ID: LCV201782546
MID L 005109-16    06/12/2017     Pg 2 of 4 Trans ID: LCV201732120

WHEREAS, the parties have continually attempted to negotiate a settlement of all issues between them and having participated in a mediation session on August 16, 2016 with Mediator, the Honorable Michael Brooke Fisher, J.S.C. (Ret.);

WHEREAS, following the August 16, 2016 mediation session, the parties continued to negotiate a resolution of all issues between them and on or about February, 2017, the parties resolved the issues between them and entered into a settlement agreement requiring additional mediation;

WHEREAS, the parties attended a final mediation session on April 24, 2017;

WHEREAS, the Mediator, the Honorable Michael Brooke Fisher, J.S.C. (Ret.) conducted the final mediation session and prepared a memorandum confirming that with his input, and the participation of all counsel, a settlement of this matter was facilitated;

WHEREAS, the parties have agreed to a settlement in the amount of $450,000.00 to be memorialized in this Consent Judgment subject to the terms of the parties Settlement Agreement; and

**NOW THEREFORE**, the Parties intending to be mutually bound, and the Court finding that there is good cause for the entry of this Consent Judgment; it is on this _26_ day of May, 2017 ORDERED that Final Judgment is entered in favor of Plaintiff, Aegis Security Insurance Company and against the Defendant, Global Indemnity Insurance Agency, Inc., for the sum of Four Hundred Fifty Thousand Dollars ($450,000.00) plus post judgment interest until paid, subject only to the terms of the parties Settlement Agreement.

_____
J.S.C.

MID L 005109-16    07/27/2017    Pg 3 of 3 Trans ID: LCV201782546
MID L 005109-16    06/12/2017    Pg 3 of 4 Trans ID: LCV201732120

**CONSENTED AND AGREED TO BY:**

ROMANO GARUBO & ARGENTIERI          COUGHLIN DUFFY, LLP
*Counselors at Law LLC*


By: _____          By: _____
Michael F. Romano, Esquire             Jason A. Meisner, Esquire
Attorney for Plaintiff, Aegis Security   Attorney for Defendant, Global Indemnity
Insurance Co.                          Insurance Agency, Inc.

# EXHIBIT M

# CONFIRMATION OF MEDIATION AGREEMENT

Re: Aegis Security Ins. Co. v. Global Indemnity Ins. Agency Inc.
       Docket No.: MID-L-5109-16


OnApril 24, 2017 the Hon. Michael Brooke Fisher J.S.C. (Ret.) conducted a mediation with the attorneys for plaintiff and defendant. This was a continuation of a mediation originally held on August 16, 2016. The court was presented with proposed findings of fact and exhibits agreed to by the parties. Pursuant to agreement the parties through their attorneys stipulated that damages sustained by the plaintiff were in the amount of $498,722.17.

The parties, through their attorneys, recognize that there are certain costs and risks associated in further pursuing the matter. With input from the mediator in the mediation process the parties have agreed to a settlement in the amount of $450,000, said settlement to be memorialized in a consent judgment to be filed with the court in the above docketed matter.

Consented to:

Aegis Security Insurance Agency

by

_____
Michael F.J. Romano, Esq.

Global  Indemnity Insurance Agency, Inc.

by

_____
Jason Meisner

Prepared by Michael Brooke Fisher, J.S.C. (Ret.)